CASE 15—PETITION EQUITY—OCTOBER 5.

## Smith and wife vs. Payne.

APPEAL FROM BARREN CIRCUIT COURT.

A division of slaves long acquiesced in, and ratified by open and notorious acts of ownership, by all the parties interested in them, should be regarded as estopping the parties, and those claiming under them, from disturbing the division.

A. J. JAMES,                                    For Appellants,
CITED—
3 *Littell*, 415; *Lillard vs. Robinson.*
12 *B. M.*, 121; *Hughes vs. Hughes.*

J. W. GORIN,                                    For Appellee,
CITED—
2 *Sugden on Powers*, 4–5–6, 154–5–6.
1 *Ves.*, 174; *Cunningham vs. Moody.*
4 *Tenn. Rep.*, 39; *Doe vs. Martin.*
11 *B. M.*, 89; *Arnold's ex'rs, &c., vs. Arnold's ad'r.*
12 *B. M.*, 629; *Grigsby, &c., vs. Breckinridge, &c.*
1 *Met.*, 514; *Wood's ad'r vs. Wood's dev.*
2 *Jarman on Wills*, 632.
4 *Littell*, 346; *Ewing's heirs vs. Ewing's ex'r.*
5 *Littell*, 258; *Merriwether vs. Booker and wife.*
*Littell's Select Cases*, 331; *Pinkard vs. Smith and wife.*
7 *Mon.*, 246; *Irvin vs. Divine.*
9 *B. M.*, 95; *Davenport vs. Prewitt's ad'r.*
10 *B. M.*, 412; *Morrow vs. Whitesides' ex'r.*
10 *B. M.*, 469; *Jackson's ad'r vs. Sublett.*
12 *B. M.*, 42; *Sanders' ex'r vs. Sanders.*
4 *B. M.*, 539–40; *Lasley vs. Blakemore.*

Smith and wife vs. Payne.

2 *Sugden on Powers*, 232–3–4–5–6.

9 *Dana*, 2 *and* 3 ; *Philips' devs. vs. Beall and wife.*

9 *B. M.*, 204; *Yates and wife vs. Gill, &c.*

12 *B. M.*, 121; *Hughes vs. Hughes.*

2 *Met.*, 466; *Churchill vs. Churchill.*

4 *Met.*, 339 ; *Sheets and wife vs. Grubbs.*

2 *Jarman on Wills*, 52.

15 *B. M.*, 399 ; *McGaughy's ad'r vs. Henry, &c.*

4 *Kent*, 327–8, 345.

7 *B. M.*, 13 ; *Collins, &c., vs. Carlisle's heirs.*

*Sugden on Powers*, 154–5–6.

CHIEF JUSTICE PETERS' DELIVERED THE OPINION OF THE COURT:

James Robinson, by his last will and testament, which was admitted to record by the county court of Albemarle county, Virginia, in March, 1820, made the following disposition of his property :

" I give the whole of my estate, both real and personal, to my wife, Sally Robinson, to be possessed and disposed of by her, for her own use and the use of our children, during her natural life. And further, I hereby empower her, previous to her death, to make any alteration in the following disposition of my estate among my children which at that time she may think equity required, according to the circumstances of the children and of the estate at that time, provided that alteration be made by her *will* legally executed ; but if no such will shall be made by her," then the testator gave the whole of the land of which he should die possessed to his son James ; and directed, as that was a larger portion than he could give to any other child, and as his daughter Betsy was afflicted so that she would probably never marry, and justice seemed to require, in consequence of her affliction, that some provisions should be made for her more than

his other daughters, that his son James, to whom he had given his land, should furnish her a home with him, or if she should prefer living with one of her sisters upon their marriage, then James was to pay her board. He further willed that his son James should have his negro boy John, at such price as his executors should fix upon him.

In the next clause of his will he says: "*The rent* of my *negroes*, together with the price of John, *are* to be equally divided among my three daughters, Betsy, Eleanor, and Sally."

He then gives to his son James, for the reason which he states, one horse and one cow, which he has the privilege of selecting, and the balance of his stock of every kind, together with his household furniture and plantation utensils, he directs to be equally divided between his children, James, Betsy, Eleanor, and Sally, the division not to take place until the children become of age or one of the girls shall marry; but the time when the division shall be made he left to the discretion of his executors, who were also named as the guardians of his children.

The residue of the will has no relation to the question involved in this controversy.

Three persons were named in the will as executors; but it does not appear that any one ever qualified.

The testator's son James died in infancy and unmarried, after the death of his father, and the estate which he took under the will passed to his mother and sisters.

It is intrinsically probable, that from the death of the testator till 1831, Mrs. Sally Robinson and her three daughters continued to reside on the family homestead together. In the last named year Eleanor married appellee, and removed with her husband to another country, where they remained till September, 1832, when appellee and his wife removed to Mrs. Robinson's, and they all

then lived there as one family until 1838 or 1839, when they sold the real estate left by testator, and all removed to Barren county, Kentucky, and continued to live together until 1843, when Miss Sally Robinson married a Mr. Jordan, and in the fall of that year Mrs. Robinson and her daughter Betsy went to live with Mrs. Jordan.

When the family removed to Kentucky, the slaves which were left by the testator, with their children, were brought along; and in 1843, some short time before the marriage of Miss Sally Robinson, a written agreement was signed by the mother, daughters, and appellee Payne, to divide the slaves, and a division of them was then made, to which it will be necessary hereafter to refer.

In 1845 Mrs. Eleanor Payne died, leaving an only child, then eight or nine years of age, and now Mrs. Smith, one of the appellants.

Mrs. Sally Robinson, the widow of said testator, made and published her will in 1853, which was admitted to record in the Barren county court in 1858, in which she undertook to dispose of the negroes, or some of them, which her husband had left, with those who had been born since his death, and to give to her granddaughter, Mrs. Smith, negroes Hambleton, Robert, and Mildred, all of whom had been, under the conventional division of 1843, assigned and set apart to her mother, and then delivered up to her or to herself and husband.

In 1848 appellee purchased the tract of land which is now the principal subject of litigation between the parties, and took a conveyance therefor to himself. In 1857 appellants were married, and were in a short time thereafter permitted by appellee to go upon the land, where they have resided ever since.

In 1863 this action was brought by Smith and wife, to compel appellee to convey the same land to Mrs.

Smith. They alleged that the land was paid for by money arising from the sale of the slaves, Mildred and Hambleton, who were the property of Mrs. Smith, under the will of her grandmother, Sally Robinson. Mildred, they allege, was sold in 1848, for six hundred and fifty dollars or six hundred dollars, and the money applied to the first payment of the land, and Hambleton some years thereafter, at one thousand five hundred dollars, and a part of the price received for him applied to pay the money which appellee had borrowed to pay the residue of the purchase money for the land that the price of Mildred lacked in paying. They allege that appellee holds the title to the land in trust for them; that he had recently, before they commenced their action, notified them to surrender the land up to him, and would proceed to enforce his demand unless restrained. They pray for an injunction that he be compelled to surrender the legal title to Mrs. Smith, for a judgment against appellee for the price at which he sold Hambleton, with hire to the date of the sale, and interest since that period on the price, and for one third and one sixth of a negro woman, Patsey, and child.

The appellee, in a most elaborate answer, denies that the land was paid for out of the proceeds of the sale of Mildred and Hambleton, or either of them; resists the right of appellants to land or negroes; controverts their right to any share in Patsey and child; sets up and relies upon the agreement to divide the slaves, executed by all the parties interested, and the division made by themselves in conformity thereto; and that the slaves thus divided were delivered up to the parties respectively; that, by virtue of his marriage with the devisee, Eleanor, he became the owner of the slaves set apart to her, and upon his continued adverse possession, acquiesced in by

the family, as a bar to any claim of appellants, and denies that the power of appointment conferred by the will of testator on his wife was broad enough to embrace or extended to grandchildren; says he gave to his daughter two of the slaves allotted to his wife, viz: Robert and Lucy; that Lucy is dead, and he then gave her a man, Jacob, a son of Patsy.

Appellants' petition was dismissed, and they have appealed.

Upon the subject of the power conferred upon his widow by the testator to alter the disposition of his estate made by him, we are clearly of opinion that she was not limited to the *children* of the testator. The power which he conferred on her was to alter the disposition of his estate which *he had* made amongst *his children;* but the alteration prospectively to be made by his wife was not by the letter or spirit of the clause confined to the children of testator; nor do we think that this construction is in conflict with, but is rather strengthened by, the sentence immediately following, in which he suggests that his widow will make such alteration as she may think equity required, according to the circumstances of the children and of the estate at that time; from which we understand the testator as intending, by the power thus conferred, to protect his descendants, as far as he could, from misfortune and poverty; and we cannot doubt, that, if one of testator's daughters should have died, leaving children unprovided for and unprotected, a *circumstance* which had happened to many, and from which his family had no special exemption, he intended and believed his widow, by this power which he had conferred on her, would have made such provision for them as was just and proper regarding the rights of others. But this question we need not decide, since there is one of graver

import standing between appellants and the relief they seek.

Certainly if Mrs. Robinson had not attempted to ex-- ercise her power of appointment under her husband's will, and after this conventional division of the slaves had been made had died intestate, the title to those who had been allotted to appellee's wife would, by virtue of his marriage, have vested in him, he having taken them into possession during the marriage.

This division was the result of a family consultation, all the parties interested being present and participating therein, induced by the prospective marriage of Miss Sally W. Robertson, which was shortly thereafter con- summated. The terms, as agreed upon, were reduced to writing, signed by the widow, Mrs. Robinson, her daugh- ters, and appellee, the division then made, and the slaves assigned to each one taken into possession ; and although the widow lived fifteen years after this division was made, it was during that whole period acquiesced in, and recog- nized as binding on all, each one manifesting their claim to the exclusive ownership of those set apart to her; but all public acts, such as employing them in their own busi- ness, hiring them out, and by selling some of them ; the widow herself sold one of the slaves set apart to her, and applied the price to the discharge of a part of a debt she owed.

This division so long acquiesced in, and ratified by open and notorious acts of ownership in the slaves by all the parties, should be regarded as estopping the parties and those claiming under them from disturbing it at so late a period; otherwise, irreparable injury and injustice might be inflicted on innocent purchasers and others interested.

The obligation a parent is under to divide his possessions while living with his own offspring, and to bestow all his goods on her when the period arrives when he can no longer use them, is altogether a moral one, such as this court has no power, even if it had the will, to enforce.

Upon the whole case, we are of the opinion that appellants have failed to establish any right to the relief sought, and the judgment must therefore be *affirmed*.