Lou. & Nash. R. R. Co. v. Ballard.

CASE 43—PETITION ORDINARY—MARCH 5.

# Lou. & Nash. R. R. Co. v. Ballard.

APPEAL FROM MARION CIRCUIT COURT.

1. RAILROADS—DUTY TO PASSENGERS.—The officers of a railroad train, as to passengers *in transitu*, should be regarded as the corporation itself, and it is, therefore, as responsible for their acts in the conduct of the train and the treatment of the passengers as the officers of the train would be for themselves if they were the owners of it.

2. EXEMPLARY DAMAGES MAY BE RECOVERED OF A RAILROAD COMPANY FOR AN INJURY TO A PASSENGER resulting from a violation of duty by one of its employes in the conduct of the train if the violation of duty be accompanied with oppression, fraud, malice, insult or other willful misconduct, evincing a reckless disregard of consequences. As to female passengers, the rule goes further, and there is as to them an implied undertaking upon the part of the company that it will protect them against obscenity, immodest conduct or wanton approach. Mere "indecorous" conduct, however, even toward a female passenger, is not sufficient to authorize exemplary damages.

In this action by appellee to recover for an injury resulting from being taken past a station to which she had purchased a ticket, it was error to instruct the jury that if any of the employes of the company were "indecorous" or insulting, they should award the plaintiff " damages, in their discretion," not exceeding the amount claimed in the petition.

3. EVIDENCE.—Testimony as to the conduct of a brakeman was competent, although only the conduct of the conductor was specifically complained of.

4. SAME.—Any circumstance attending the commission of a trespass or a wrong, although not set forth in the declaration, may be given in evidence with a view of affecting the question of damages, save where the circumstances themselves constitute an independent cause of action.

WM. LINDSAY FOR APPELLANT.

This being an action for breach of contract, and there being no circumstances of oppression or insult, no more than compensation can be awarded. It was, therefore, error to submit to the jury the question of exemplary damages, and an outrage on the part of the jury to return the verdict complained of, which was, evidently, the result of passion or prejudice.

Lou. & Nash. R. R. Co. v. Ballard.

ROUNTREE & LISLE on same side.

1. The court should not have allowed the jury to give exemplary damages—certainly not for mere indecorum on the part of the officers of the train. (Singleton v. Kennedy, 9 B. M., 226; Jacob v. L. & N. R. R. Co., 10 Bush, 273; Slater v. Sherman, 5 Bush, 213; Jennings v. Maddox, 8 B. M., 432; Parker v. Jenkins, 3 Bush, 590; 3 Parsons on Contracts, chap. 8, part 2d, pages 175-6; Sedgwick on Damages, side pages 37-39; Dawson v. L. & N. R. R. Co., 4 Ky. Law Rep.)

2. It was error not to define the measure of compensation to the jury. (Chiles v. Drake, 2 Met., 146; Dawson v. L. & N. R. R. Co., 4 Ky. Law Rep.; L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 728; Wormald v. Hill, 4 Ky. Law Rep.; Alsop v. Adams, 7 Ky. Law Rep., 746; Taylor v. Howser, 12 Bush, 467; Parker v. Jenkins, 3 Bush, 590; L. & N. R. R. Co. v. Fox, 11 Bush.)

3. Even where the evidence warrants vindictive damages, the jury may, in their discretion, give compensatory damages only; and this discretion the courts can not control. (Ky. Cent. R. R. Co. v. Gastineau's Adm'r, 7 Ky. Law Rep., 3; L. & N. R. R. Co. v. Brooks, Id., 110.)

4. As the petition complained of the conduct of the conductor only, the testimony of the plaintiff as to what the brakeman did was incompetent.

HILL & RIVES for appellee.

1. The officers of a railroad train, as to passengers, are to be considered as the corporation itself, and it is their duty to see that passengers are treated with civility and propriety, and special deference shown to women. (Bass v. Chicago and Northwestern R. R. Co., 36 Wis., 295; Croaker v. Chicago & Northwestern R. R. Co., 36 Wis., 657; Day v. Owen, 5 Mich., 120; Nieto v. Clark, 1 Cliff., 145; Chamberlain v. Chandler, 3 Mason, 242.)

2. This is an action *ex delicto* and not *ex contractu*, and in such actions "exemplary damages may be recovered when there is oppression, fraud, malice, *insult* or other willful misconduct evincing a reckless disregard of consequences." (Shearman & Redfield on Negligence, sec. 4; Dawson v. L. & N. R. R. Co., 6 Ky. Law Rep.; Sherley v. Billings, 8 Bush, 147; Croaker v. Railroad Co., 36 Wis., 657; Day v. Woodworth, 13 How., 363; Chiles v. Drake, 2 Met., 152; Slater v. Sherman, 5 Bush, 213; Jennings v. Maddox, &c., 8 B. M., 432.)

Under the circumstances of this case, "indecorous words, tone or manner," were sufficient to authorize the jury to give exemplary damages.

3. The conduct of the brakeman was part of the transaction, and proof of his conduct was proper for the purpose of showing the damage sustained, although not complained of in the petition. (Sherley v. Billings, 8 Bush, 115; Hall v. Conn. River Steamboat Co., 13 Conn., 319;

Litt. Select Cases, 499; 3 J. J. Mar., 229; 5 B. M., 480; 12 B. M., 461; 13 B. M., 371; 39 Conn., 120; Sedgwick on Measure of Damages (6th ed.), side page 538.)

4. The instructions asked by appellant defining compensation were erroneous, in that they left out of the computation the mental suffering and anxiety occasioned by the injury inflicted (Lou., Cin. & Lex. R. R. Co. v. Case's Adm'r, 9 Bush, 736; Shearman & Redfield on Negligence, sec. 606), and it was not incumbent on the court to formulate an instruction defining compensation.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Lou. E. Ballard, after purchasing a proper ticket, took passage from one intermediate station to another upon a passenger train of the Louisville and Nashville Railroad. It failed to stop at the platform at her place of destination, which was a flag station. It was a down grade at that point, and there is some evidence tending to show that the car-brakes did not operate well, in consequence of which the train ran some fifty or sixty yards beyond the platform, where it was stopped, and the station then announced by the proper person; but the appellee did not get off the train. Upon the other hand, there is testimony tending to show that this stop was not made, and that no effort was made to stop the train until it was done at the request of the appellee, at a point between her destination and the next station. The weight of the evidence shows that the conductor then informed her that she could either go on to the next station, or he would stop the train and she could get off there; and that upon his so telling her the second time, he did stop it, and she got off at that point, which was a lonely place, and about a mile beyond her station. She says that the conductor "seemed very impatient, and his tone was rather rough for a gentleman;" that he did

not assist her in getting off with her baggage, which consisted of a valise and bundle, and that as she jumped from the lower step of the platform to the ground he stood upon the platform, while a brakeman of the train, who was standing by, looked at her and "grinned."

Upon the other hand, there is evidence to the effect that the conductor did assist her out of the car, and was altogether kind and polite in his manner. There was no request upon her part that the train should be backed to her station; but this should have been done under the circumstances. The appellee was compelled to walk back to her station, and from thence three-quarters of a mile to her home; in consequence of which she was confined to her bed the most of the time for three or four days, and unable to teach her school for a week.

The jury in this action by her for damages returned a verdict for three thousand dollars.

Manifestly, it can not be sustained upon the ground that it did not include exemplary damages, and was compensatory only for the breach of the contract for transportation.

If upheld, it must be upon the ground that she was entitled to exemplary damages, and that this question was submitted to the jury by proper instructions. They were told: " If the jury believe from the evidence that the defendant's agents or employes, or any of them in charge of defendant's train, carried the plaintiff beyond the station for which she had purchased a ticket, and refused to put her off at her station, and were *indecorous or* insulting, either in words,

tone or manner, they should find for the plaintiff, and award her damages in their discretion, not exceeding five thousand dollars, the amount claimed in the petition."

A corporation can act only through natural persons. It, of necessity, commits its business absolutely to their charge. They are, however, selected by it. In the case of a railroad, the safety and comfort of passengers is necessarily committed to them. They act for it. Its entire power, *pro hac vice*, is vested in them, and as to passengers *in transitu* they should be considered as the corporation itself. It is, therefore, as responsible for their acts in the conduct of the train and the treatment of the passengers as the officers of the train would be for themselves, if they were the owners of it.

Public interests require this rule. They also demand that the corporation should be, and it is, liable for exemplary damages in case of an injury to a passenger resulting from a violation of duty by one of its employes in the conduct of the train, if it be accompanied by oppression, fraud, malice, insult or other willful misconduct, evincing a reckless disregard of consequences. (Dawson v. L. & N. R. R. Co., 6 Ky. Law Rep., 668.)

As to female passengers, the rule goes still farther. Their contract of passage embraces an implied stipulation that the corporation will protect them against general obscenity, immodest conduct or wanton approach. (Commonwealth v. Power, 7 Met., 596 ; Croker v. Railway Co., 36 Wis., 657 ; Nieto v. Clark, 1 Clifford, 145 ; Chamberlain, &c., v. Chandler, 3 Mason, 242.)

It was improper, however, to instruct the jury, as was in effect done in this instance, that "*indecorous*"

conduct alone is sufficient to authorize exemplary damages. The term is too broad. It may embrace conduct which would not authorize their infliction.

It is true that the peculiar element which, entering into the commission of wrongful acts, justifies the imposition of such damages, can not be so definitely defined, perhaps, as to meet every case that may arise. It has been said that they are allowable where the wrongful act has been accompanied with "circumstances of aggravation" (Chiles v. Drake, 2 Met., 146); or if a trespass be "committed in a high-handed and threatening manner" (Jennings v. Maddox, &c., 8 B. M., 430); or where the tort is "accompanied by oppression, fraud, malice or negligence so great as to raise a presumption of malice" (Parker v. Jenkins, 2 Bush, 587; or, as was said in Dawson v. Railroad Company, *supra*, where the wrongful act is accompanied by "insult, indignity, oppression or inhumanity."

It would, however, be extending the rule unwarrantably to hold that they could be imposed, provided the conduct was merely "*indecorous.*" This, as defined by Webster, and as commonly understood, means impolite, or a violation of good manners or proper breeding. It is broad enough to cover the slightest departure from the most polished politeness to conduct which is vulgar and insulting.

It does not necessarily, or indeed generally, involve an insult. The latter assumes superiority, and offends the self-respect of the person to whom it is offered; while the former excites pity or contempt for the one guilty of it. A word or act may be both indecorous and insulting, but yet it often lacks the essential elements of an insult.

In the case now under consideration the jury may have believed it was indecorous in the conductor not to stop the train at the platform; or not to carry her valise for her when she was leaving the train; or to let her get off between stations, although she chose to do so rather than suffer inconvenience by being carried to the next one; or in merely telling her that she could walk back to her station; yet none of these things amounted to "insult, indignity, oppression or inhumanity."

The lower court properly refused the request as made for special findings. The interrogatories offered merely required the jury to say what amount they found as compensatory, and what sum as exemplary, damages. They involved mixed questions of law and of fact.

Upon a re-trial, the question of limiting the finding to compensatory damages should be presented to the jury under proper instructions, and the difference between them and those which are exemplary defined.

The evidence as to the conduct of the brakeman was competent. It is true that it was not specifically complained of in the petition, but only that of the conductor. The brakeman was, however, one of the agents of the railroad company in the management of the train upon which the appellee was a passenger. It is not necessary that a petition should enumerate specifically that this or that person connected with the management of the train was guilty of improper conduct in order to authorize the admission of evidence as to this or that particular party. It is sufficient to aver the breach of duty upon the part of those in control of the train. Beside, in this instance, the conduct

of the brakeman complained of was in the immediate presence of the conductor, and occurred at the time of the other alleged acts of which the appellee complains. We do not mean to say whether he was guilty of improper conduct or not; but it was a part of the *res gestæ*, and, therefore, admissible. Any circumstances attending the commission of a trespass or a wrong, although not set forth in the declaration, may be given in evidence with a view of affecting the question of damages, save where they within themselves constitute an independent cause of action. (Sedgwick on Measure of Damages, side page 538, n. 3.)

For the reason indicated the judgment below is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.