CASE 25—PETITION ORDINARY—JANUARY 22.

## Lou. & Nash. R. R. Co. v. Ballard.

APPEAL FROM MARION CIRCUIT COURT.

1. RAILROADS—DUTY TO FEMALE PASSENGERS.—In an action against a railroad company by a female passenger to recover for an injury resulting from being taken past a station to which she had purchased a ticket, it was not improper to instruct the jury that if any of the employes of the company were "insulting in words, tone or manner," they should find for the plaintiff "damages in their discretion" not exceeding the amount claimed in the petition.

2. INSTRUCTIONS AS TO DAMAGES.—Such an instruction correctly submitted the question of punititive damages to the jury, and as the question of compensatory damages was correctly submitted by another instruction, no other instructions were necessary.

3. EXCESSIVE VERDICT.—The jury having returned two verdicts for substantially the same amount, this court will not reverse upon the ground that the verdict (for $3,005) is excessive.

H. W. BRUCE, WM. LINDSAY AND W. J. LISLE FOR APPELLANT.

Where the claim is for punitive damages it should be left to the jury to say whether they will give punitive damages. (L. & N. R. R. Co. v. Brooks, 83 Ky., 139.)

RIVES & SPALDING FOR APPELLEE.

An opinion of this court rendered on a former appeal is the law of this case and not subject to review or modification on the second appeal. (LeGrand v. Baker, 6 Monroe, 243; Mason v. Mason, 5 Bush, 193.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, a young lady, was, in February, 1882, teaching school at Loretto, Marion county, Ky. Her father lived between a half and a mile from a flag station on the appellant's road, known as Harper's Ferry. The appellee, on Saturday evenings, usually went to her father's home and returned again on Monday morning to her school. She made her trips to and

from Harper's Ferry station on the appellant's passenger train. Her father was in the habit of meeting her at Harper's Ferry, and taking her from that place to his home on horseback. She, Saturday evening, February 13, 1882, purchased a passenger ticket which entitled her to travel on the appellant's train from Loretto to Harper's Ferry. She boarded the train at Loretto to make her trip to the latter place. She carried with her a bundle of considerable size, and a valise. The conductor, Sweeney, was in the habit of running said train on Saturday evenings, and had said train in charge that evening, and took up the appellee's ticket before the train reached Harper's Ferry. The appellee swears that the train did not blow its whistle for Harper's Ferry, nor did it stop at that place. In this she is corroborated by several persons who were passengers on the train. Also, her father says that he was on his way to Harpers Ferry for the purpose of taking the appellee home, but, as the train passed the station without stopping, he concluded that the appellee was not on it, and he returned to his home without going to the station. The appellee says that she discovered that the train had passed the station; that she then called to the conductor, who was at the far end of the car engaged in conversation with some one, several times before she got his attention ; that he then came to her and asked her at what place she wished to get off; she said, at Harper's Ferry, to which point she had purchased her ticket. He said that the train had passed Harper's Ferry, and that he could not go back to it, but he would take her on to the next station. She declined to be taken on to the next station, but

claimed that she should be put off at Harper's Ferry.
He said, if she would not go on she would have to
get off the train and walk back. She said she
could do so, but she would make him pay for it.
He waived his hand towards the door, as if to say
go, and she went, carrying her bundle and valise,
and he following to the door and standing on the plat-
form without offering to assist her ; that she had to get
off the train without any assistance whatever; that a
brakeman was at hand but offered her no assistance,
but seemed to be enjoying the situation ; that as she
got on the ground from the coach-steps, the lowest
step being some three or four feet from the ground,
the brakeman being right at her, grinned at her with
a broad grin ; that the conductor's tone of voice and
manner towards her were insulting ; that she got off
the train about a mile from Harper's Ferry, and she
had to walk back to it, and from thence home, carry-
ing her bundle and valise; that from the place that she
got off of the train to Harper's Ferry, there was no
pathway; the route was rough and muddy and unin-
habited ; that from the walk and excitement she was
made sick, not, however, in bed all the time, for four
days. On the other hand, the conductor swears that,
owing to some casualty, over which he had no control,
the train was not stopped at the platform, but was
stopped within sixty or seventy yards after passing
it ; that he waited to see if anyone would get up, as if
to get off, but no one did ; that he then called out, "All
out for Harper's Ferry," and no one getting up as if to
get off, he went on. He denied in toto the conduct
attributed to him by the appellee. He says that she

was put off not exceeding four or five hundred yards from Harper's Ferry. The brakeman sustains the conductor. He also says that he was not rude to the appellee, but helped her off the train. The testimony of others is to the same purport. The father of the appellee swears that on the next morning the appellee showed him the place that she got off the train, and he stepped the distance to Harper's Ferry, and it was one thousand nine hundred and seventy-five yards.

It is manifest that the jury believed the appellee's entire story; therefore, they awarded to her three thousand and five dollars in damages. Theretofore there had been a trial of the case upon substantially the same evidence as was introduced on the trial of this case, which resulted in a verdict of three thousand dollars for the appellee, which this court set aside on account of an error in one instruction, which was as follows : "If the jury believe from the evidence that the defendant's agent or employes, or any of them in charge of the defendant's train, carried the plaintiff beyond the station for which she had purchased a ticket, and refused to put her off at her station, and were indecorous or insulting, either in words, tone or manner, they should find for the plaintiff, and award her damages, in their discretion, not exceeding five thousand dollars." This court disapproved said instruction upon the ground that it was improper to authorize the jury to find for the appellee on account of the indecorous conduct of the appellant's employe alone; but the remaining portion of the instruction was approved.

Instruction No. 1, in this case, uses the language:

"Were insulting either in words, tone or manner."
The appellant objects to this instruction on account
of the use of the word "tone." We can not see the
force of the objection as applied to a female passenger.
The jury were told that if the appellant's employes
"were insulting in tone," they should award damages;
that is, if their voice was so accented, inflected or
modulated as to express intentional insult, then the
jury should find for the appellee. It was in the fore-
going sense that the word "tone" was used, in which
sense the word would be commonly understood by men
of ordinary intelligence.

The appellant also objects to the latter part of the
instruction which reads: "They should find for the
plaintiff and award damages in their discretion, not
exceeding in all five thousand dollars," etc. This part
of the instruction is objected to because it authorizes
punitive damages. It does authorize punitive dam-
ages, and the trial judge, doubtless, intended that it
should authorize punitive damages. We think that
as an instruction on punitive damages it was properly
drawn.

The remaining instructions given by the court draw
a correct distinction between compensatory and puni-
tive damages; also the composition of compensatory
damages was correctly defined in one of said instruc-
tions. Indeed, instruction No 1 having correctly sub-
mitted the question of punitive damages to the jury,
and one of the other instructions having correctly sub-
mitted the question of compensatory damages to the
jury, it was unnecessary to have given the remaining
instructions.

The refusal to give instructions B, C and D at the instance of the appellant, was not an error, because the jury were already fully and correctly instructed. This court held, when the case was here before, that the evidence in reference to the conduct of the brakeman was competent. (Louisville and Nashville Railroad Company v. Ballard, 85 Ky., 307.

The jury having returned two verdicts for substantially the same amount, we will not reverse on account of its excessiveness.

The judgment is affirmed.