CASE 57—PETITION ORDINARY—MAY 29.

# Louisville & Nashville Railroad Co. v. Webb.

## Same v. Same.

APPEAL FROM HOPKINS CIRCUIT COURT.

1. PEREMPTORY INSTRUCTION—LIABILITY OF A RAILROAD COMPANY FOR INJURY TO CHILD.—Upon the trial of an action for damages against a railroad company for injury to a child, it appearing from the plaintiff's evidence that on the day the injury was received the eleven-year-old boy boarded the freight train without the knowledge or consent of the conductor for the purpose of riding a short distance to a water-tank, and reached there in safety and got off the train; but after the train had started again, without the knowledge of the conductor and not within his sight, he caught hold of a ladder handle for a short time, and afterwards in jumping from the train landed on a pile of coal alongside of the track, part of which slipped under his feet and threw him under the train whereby he lost one of his feet, a peremptory instruction to find for the defendant should have been given.

2. PROXIMATE CAUSE.—The immediate or proximate cause of the accident, under these circumstances was the dislocation of the lumps of coal when his feet struck the pile, whereby his foot was thrown under the cars.

3. EVIDENCE.—Testimony as to what the conductor said to the boys on days previous to the day the accident occurred, and the testimony that the conductor and brakemen had on previous days encouraged the boys to catch hold of the ladders and swing therefrom, was inadmissible.

4. RES GESTAE.—A statement of the conductor after the train had run some distance and stopped, and he had returned to the place of the accident, was not competent as part of the *res gestae*.

5. CONTRIBUTORY NEGLIGENCE—WHAT CONSTITUTES IN A CHILD.—A child is required to exercise only such a degree of discretion and care as may be reasonably expected of one of his age and intelligence under like circumstances; but age alone is not the test of the degree of care required of children in such cases.

Louisville & Nashville Railroad Company v. Webb.

6. RIGHT OF RAILROAD COMPANY TO PLACE COAL ALONG ITS TRACKS FOR ITS USE.—The placing of coal by a railroad company along its tracks, for its own necessary use, is not negligence, and not likely to be the cause of any such accident as happened in this case.

B. D. WARFIELD FOR APPELLANT.

1. The conductor of the train did not invite appellee to ride on the train, but when he found him there made him come inside of the caboose and stay until the train stopped, when he ordered him to *get off* and *stay off*. Appellee again got on the train of his own volition without the knowledge of the conductor and it was then he was hurt. The conductor did not tell appellee on the day that he was hurt that if he would load freight, he (the appellee), could ride on the train, therefore conductor was guilty of no negligence.

2. Appellant should not be held liable for appellee's accident when his action was in violation not only of a prudence which a boy of appellee's age should be expected to show, but also of a statute of the State of Kentucky. (212, Ch., 171, Acts of Kentucky, 1891-2-3, page 708; Ky. Stat., 805.)

4. Even though conductor had permitted the boy to ride on the train a certain distance and had then ordered him off, and appellee in express violation thereof had once more gotten on the train and had then been hurt, the conductor's act in allowing the boy to ride said certain distance had no *proximate* connection with appellee's injury, therefore the appellant can not be held liable. (Shearman & Redfield on Negligence (4th Ed.), sec. 261; 19 Amer. & Eng. Enc. of Law, 301; L. & N. R. Co. v. Hunt by &c., 11 Ky. Law Rep., 825; City of Covington v. Bramlege by &c., 14 Ky. Law Rep., 395; P. & M. R. Co. v. Hoehl, 12 Bush, 43; Mc-Veagh v. A., T. & S. F. R. Co., 18 Amer. & Eng. R. Cases, 651.)

5. A boy of appellee's age must exercise what is to be regarded as a reasonable precaution for one of his years for his own safety. (P. & M. R. Co. v. Hoehl, 12 Bush, 43; Moore & wife v. P. R. Co., Supreme Court Penn., 1882; 4 Amer. & Eng. Railroad Cases, 569; Shearman v. H. & St. J. R. Co., 72 Mo., 62, 4 Amer. & Eng. R. Cases, 589; Williams & wife v. Texas & Pac. R. Co., Supreme Court of Texas, 1883, 15 Amer. & Eng. R. Cases, 403; Atchison &c. R. Co. v. Flinn, 24 Kansas Rep., 1 Amer. & Eng. R. Cases, 240; Woodbridge v. Delaware &c. R. Co., 105 Pa. St., 460; Erwin v. St. Louis, I. M. & S. R. Co., Supreme Court of Mo., 1888, 35 Amer. & Eng. R. Cases, 390; A., T. & S. F. R. Co. v. James Smith, &c., 8 Amer. & Eng. R. Cases, 327; Wm. Nolan v. N. Y. & N. H.

R. Co., 25 Amer. & Eng. Cases, 342; Sullivan v. Louisville Bridge Co., 9 Bush, 90.)

6. Evidence of negligence that could not have contributed to the accident or injury complained of should not be admissible. (L. & N. R. Co. v. Fox, 11 Bush, 505; L., C. & L. R. Co. v. Sullivan, 81 Ky., 624; Ramsey v. L. & N. R. Co., 89 Ky., 99; Johnson's Adm'r v. L. & N. R. Co., 91 Ky., 651; Lewis v. Flint & Pere Marquette R. Co., Supreme Court of Michigan, 1884, 18 Amer. & Eng. R. Cases, 263; Henry v. St. L., K. C. & N. R. Co., 76 Mo., 288; 12 Amer. & Eng. R. Cases, 136; Bangs v. Syracuse B. & N T. R. Co. (New York, 1886), 28 Amer. & Eng. R. Cases, 499; South Side Passenger R. Co. v. Trick and wife (Pennsylvania Supreme Court), 34 Amer. & Eng. R. Cases, 549.)

7. The conductor had no authority to carry passengers on this train, nor to hire outside persons to help load freight nor to permit them to ride on his train for such services, and if he did employ such services upon such consideration his acts in this behalf were wholly outside of the scope of his authority and therefore the company should not be bound by them.

GORDON & GORDON ON SAME SIDE.

1. The motion for a peremptory instruction should have been sustained because there was a total failure of evidence to sustain the allegations of negligence, of any employe of appellant which caused or contributed to the accident; on the contrary it showed conclusively that Willie Webb was guilty of negligence which immediately and directly caused the injury.

2. An eleven year old boy of ordinary intelligence, and bright, and active, is not of such tender years, that he can not contribute to his own injury by his own negligence. (Covington vs. Bamlege, 14 Ky. Law Rep.; Shearman & Redfield on Negligence, page 63.)

3. It was error to permit evidence to go to the jury as to what the conductor said on days previous to the accident complained of.

4. There being no conflicting evidence as to whether or not the boy was of sufficient age, intelligence and judgment to understand or comprehend the dangers incident to a moving train, that was a question for the Court.

5. The proximate cause of an event is "that which in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which the event would not have occurred." A remote cause is "one which has so far expended itself that its influence in producing the injury is too minute for the law's notice; or a cause which some independent force merely took

· Louisville & Nashville Railroad Company v. Webb.

advantage of to accomplish something not the natural or prob-able effect thereof. (Shearman & Redfield on Negligence, 4th Ed., Secs. 261, 19 Amer. & Eng. Enc. of Law, 301.)

6. Though the defendant was guilty of negligence, if there was such negligence on the part of the plaintiff, but for which the injury could not have happened, still the plaintiff can not recover. (P. & M. R. Co. vs. Hoehl, 12 Bush, 43; Sullivan vs. Lou. Bridge Co., 9 Bush, 90; Ramsey vs. L. & N. R. Co., 89 Ky., 99; Johnson vs. L. & N. R. Co., 91 Ky., 651.)

7. Where the facts are undisputed the question as to whether a certain act was the approximate cause of the accident, is a question of law for the court. (Henry vs. St. L. R. Co., 76 Mo., 288; 12 Amer. & Eng. R. Cases, 136.)

8. The Court should have given the instruction asked by appellant telling the jury that appellant had a right to place the pile of coal along its track, and that so doing was not negligence.

WM. LINDSAY ON SAME SIDE.

1. The instructions assume that there was evidence tending to show that the boy swung from the train, whilst aboard, at the instance and with the consent of the conductor, and defined the duty of the train-people under that state of fact. There was no evidence upon which to base this assumption.

2. There is a marked distinction between the degree of care the con-ductor was bound to exercise whilst the boy was on the train, and after he had left it in safety, and without any authority to again get on it. The conductor had no knowledge and no reason to be-lieve that the boy contemplated jumping on the moving train.

3. It was certainly error to instruct the jury that appellant's con-ductor owed any such duty to the boy after he had been put off the train in safety, as to make it gross negligence in him not to anticipate that the boy would swing to the train as it moved out.

H. W. BRUCE ON SAME SIDE.

No brief in the record.

EDWARD W. HINES FOR APPELLEES.

1. A conductor of a freight train is guilty of negligence in inducing a boy to ride upon his train, when he had reason to anticipate that the boy would attempt to swing upon the train while it was moving.

2. The testimony of the boy's companions is competent to show that

the conductor had knowledge of and encouraged the practice of the plaintiff and his companions in swinging on the moving train.

3. The plaintiff being on the train at the conductor's invitation, the conductor voluntarily takes upon himself for the time being guardianship of said plaintiff, therefore said plaintiff being on the train at the conductor's invitation the company which he represents is liable. (Railroad Co. v. Stout, 17 Wallace, 657; Bramsom's Adm'r v. Labrot, 81 Ky., 683; L. & N. R. Co. v. Popp by, &c., 16 Ky. L. Rep., 369.)

4. The infant plaintiff exercised such care as a child of like age could be expected to show and he could be held accountable no further. (Beach on Contributory Negligence, Sec. 46; Paducah &c., R. Co. v. Hoehl, 12 Bush, 49; Plumbey v. Birge, 124 Mass., 57; Penn. R. Co. v. Kelly, 31 Pa. St., 378.)

5. When passengers have been received upon a freight train without notice that it is in violation of the rules of the company they are entitled to all the rights of passengers, and the company is liable to them as passengers for injuries resulting from the negligence of its servants in charge of the train. (McGee v. Missouri Pac. R. Co., 1 Amer. St. Rep., 706.)

6. If the conductor had reason to anticipate that the appellee would swing on the moving train and did not warn him, the company is liable whether the conductor did or did not extend invitation to appellee, or even if the appellee was a trespassesr. (Brennan v. Fair Haven, &c. R. Co., 45 Conn., 295; Pittsburg, &c. R. Co. v. Caldwell, 74 Pa. St., 421; Indianapolis &c. R. Co. v. Pitzer, 109 Ind., 179; Birford v. Johnston, 82 Ind., 426.)

WADDILL, NUNN & WADDILL ON SAME SIDE.

No brief in the record.

JUGDE LANDES DELIVERED THE OPINION OF THE COURT.

By agreement these two cases were heard together in this court. They originated in the circuit court of Hopkins county, and the first named case was an action brought by Willie Webb, an infant, suing by his father, W. H. Webb, as his next friend, to recover from the appellant damages for the loss of his right foot and ankle, alleged to have been the result of the negligence of the servants and agents of

the appellant in charge of one of its freight trains on what is known as the Henderson division in the system of railroads owned and operated by the appellant. The other case was an action brought by the said W. H. Webb to recover damages against the appellant for the loss of the services of his said son, and the expenses incurred by him in procuring the necessary surgical attention, etc., for him during the period of his suffering from the aforesaid injuries, and all alleged to have been occasioned by and to have been the result of the same negligence and wrongful acts that were alleged in the first-named action as the ground of recovery therein. Both cases are based upon substantially the same state of facts.

In the action of the infant appellee the jury rendered a verdict in his favor, and fixed the damages at the sum of $5,000, and in the other. action the jury rendered a verdict in favor of the father, and awarded him the sum of $400, and a judgment having been rendered on the verdict in each case, and the court having refused to set aside the verdicts and grant the appellant new trials, the cases have been brought before us by appeal and a reversal of the judgment in each case is sought for various alleged errors, which will be noticed as far as the merits of the cases may require.

The accident occurred and the injury was inflicted upon the infant appellee at the Deer creek water tank on the line of the appellant's railroad, situated about three miles south of Sebree City, in Webster county, on the 9th day of August, 1893. Four days before that date he reached the age of eleven years. He was living with his father and step-mother at Sebree City, and from the testimony detailed by his witnesses before the jury on the trial of his case, much of which was objected and excepted to at the time by

counsel for the appellant, we gather substantially the following state of facts in his case:   The infant appellee and several boys at Sebree City, who were his companions and of about his age, had occasionally assisted in unloading freight at the depot from the appellant's local freight train previous to the day on which the accident occurred, and so employed themselves on the day before; this local freight train ran regularly between Howell, near Evansville, Ind., and Earlington, in Hopkins county; on such occasions the conductor, Peter J. Herb, in charge of the train, encouraged the boys to assist in unloading freight by promising them that they might ride on the train from Sebree to the water tank, and did permit them to take the ride; the infant appellee had ridden twice on the train to the tank before he was injured; on the day before he was injured he and the other boys carried watermelons from the train, and on that day they rode on the train to the tank; when they rode to the tank they walked back to Sebree; on the day he received the injury the infant appellee was not at the depot when the train arrived, but other boys were there, and assisted in unloading freight, the conductor having promised them the ride if they would do so; the infant appellee did not on that day assist in unloading freight, and the conductor did not say anything to him about it, and did not promise him a ride to the tank, and did not invite or request him to ride there on the train, but the infant appellee reached the depot while the other boys were unloading and saw them at work, and just before the train started from the depot on its journey southward, and towards the tank, he and some of the other boys boarded the caboose, which was in the rear of the train and was standing several car lengths back from the depot platform, and other boys boarded some of the other cars.

Louisville & Nashville Railroad Company v. Webb.

There was no proof that the conductor saw the infant appellee board the caboose, but the proof does show that the conductor was standing on the platform when the train started, and that he jumped or swung himself on the caboose from the platform while the train was in motion, and that he saw the infant appellee in the caboose after he entered it, and that he did not stop the train to put him off before it reached the tank, where it stopped to take on a supply of water for the locomotive.

The train was a long one, and it arrived at the tank without accident or injury to any one, and after it stopped, and while water was being taken from the tank, the infant appellee and the other boys got safely off and ran along the side of the standing train to the tank, where the infant appellee took a drink of water. He and some of the other boys then went back towards the rear of the train, and after the train had started from the tank, and while it was in motion, the infant appellee and other boys took hold of the ladders on the side of the cars and swung to them, and, letting go, jumped from them to the ground while the train was moving; but when the infant appellee loosed his hold and jumped, his feet struck a pile of coal which had been placed on the right of way and was for the use of the pumping engine at the tank, and the coal slipped or gave way under his feet, and in this way his right foot went under the cars, and was run over and mashed, so that his foot and about three inches of his leg had to be amputated.

There is no proof that the conductor or any of the other employes of the company saw the infant appellee or other boys when they took hold of the ladders on the sides of the cars or when they were swinging from them, and they were not warned by any of them not to do so, or of the danger of

doing it, and appellee did not see any of the trainmen at the time; but the step-mother of the infant appellee had told him to keep away from the railroad and from the trains, and his father had told him to keep out of town and away from trains, and to stay at home in the yard, and his unloading freight at the depot and riding on the train to the tank were without their knowledge or consent.

After the accident happened the train was stopped, having crossed the bridge which spanned the creek a short distance from the tank, and the conductor ran back and came up to where the infant appellee was lying.

Over the objections of the counsel for the appellant the court permitted several of the witnesses to testify that when the conductor came up he said that "this is just what I've been expecting for several days, but it is not my fault. If the boys had minded me Willie would not have been hurt."

Counsel for the appellant also objected to all of the testimony of each of several witnesses, which the court permitted to be introduced in behalf of the plaintiff, that showed what the conductor said to the boys on the days previous to the accident with reference to their helping to unload freight at Sebree and riding to the tank.

The proof shows that the infant appellee was a boy of ordinary sprightliness and intelligence. One witness said that, in this regard, "he was just like the common run of boys."

Dr. Parker, the physician and surgeon who attended him and who, with the assistance of Dr. Agnew, amputated his leg, said: "I consider him a sprightly boy—sprightly as other boys of his age and size."

The appellee said to Patrick Williams, one of his witnesses, who carried him away after he was hurt, that "if I

had minded my father it would not have happened." On cross-examination the appellee said that he "did not know it was dangerous to try to get on or swing from the train."

At the conclusion of the testimony in behalf of the appellee, counsel for the appellant moved the court to exclude from the jury so much of the evidence, already excepted to, as detailed what occurred at the depot at Sebree between the conductor and the infant appellee and other boys with reference to the boys helping to unload the cars and riding to the tank, and also all evidence of the statements of the conductor after the accident, to the effect that he had been expecting, for several days, some such accident to happen; and also moved the court to instruct the jury "to find for the defendant."

It seems that the court did not at the time act upon either of the motions to exclude testimony from the jury, but overruled the motion for a peremptory instruction to which exception was taken at the time, and the first question to be considered arises upon the action of the court in overruling the motion to instruct the jury to find for the appellant.

The motion for the peremptory instruction carried with it an admission of the truth of the material facts brought out in the testimony of the witnesses for the appellee before the jury, and if, by this evidence, it was made to appear that the agents or servants of the appellant, who were in charge of the local freight train which carried the infant appellee to the Deer creek water tank from Sebree on the day he was injured, were guilty of negligence, which was the proximate cause of the injury, then the court did not err in overruling the motion. Otherwise, the instruction ought to have been given, and the court erred in refusing to give it.

The important inquiry, therefore, is whether the facts

thus in evidence were sufficient to sustain a finding that the agents or servants of the appellant were guilty of negligence, and, if so, whether such negligence was the proximate cause of the injury suffered by the infant appellee.

The facts being admitted by the motion, which is in the nature of a demurrer to the evidence, these inquiries are purely questions of law, which must be decided by the court. After a careful study of the facts under consideration and investigation of the questions involved, in the light of the authorities relied on and quoted in the briefs of counsel on both sides, and other authorities, we have reached the conclusion that the facts do not show that the agents or servants of the appellant were guilty of negligence or of any act or omission of duty toward the infant appellee which can be said in any sense, to have been the proximate cause of the unfortunate accident, the results of which were so painful and are so much to be deplored.

This case must be governed by the ordinary principles of law applicable to cases involving questions of negligence and contributory negligence, except so far as the immature age of the infant appellee may affect the question of contributory negligence on his part. But it is manifest that his immature intelligence and unripe experience, by which he may have been, as alleged, unable to estimate the danger of swinging upon and jumping from a moving train of cars, can not be invoked to fix liability upon the appellant unless the agents or servants of the appellant voluntarily and knowingly exposed him to the dangers which resulted in his injuries, or, knowing that he was in danger, negligently failed to use such means as were in their power to relieve him from the danger and thus avoid the injuries, by reason of which failure the injuries resulted. In this view

of the case, in order to render the appellant liable, it was necessary to prove that the conductor of the train per- suaded or invited the infant appellee to get on the train and ride to the water tank; that the accident that happened there in which he was injured was one that was likely or might reasonably have been expected to happen to him in the ordinary or natural course of events; that the agents or servants of the appellant negligently failed to exercise care for his protection commensurate with the danger to which they had voluntarily exposed him; and that the accident did so happen, resulting in his injuries, without the intervention of any other independent efficient cause.    The principles of law upon which liability in such cases is based are well set- tled by the authorities.    (Am. & Eng. Enc. of Law, volume 10, page 674; Wood on Railroads, section 319, pages 1437 to 1439; Paducah & Memphis R. Co., 12 Bush, 41; Bransom's adm'r v. Labrot, &c., 81 Ky., 638; Shields v. L. & N. R. Co., 29 S. W. Rep., 978; Kentucky Hotel Co. v. Camp, 30 S. W. Rep., 1010; Van Natta v. People's Street Railway, Elec- tric Light & Power Co., &c., 34 S. W. Rep., 505; Ky. Central R. Co. v. Gastineau's adm'r, 7 Ky. Law Rep., 3; L. & N. R. Co. v. Hunt, 11 Ky. Law Rep., 825.)

Applying these principles to this case it is clear that the evidence under consideration wholly failed to fix liability on the appellant.    It shows that the infant appellee went into the caboose attached to the train of cars voluntarily, know- ing that he was acting contrary to the wishes and commands of his parents, without being invited or persuaded so to do by the conductor and without his knowledge.    The conduc- tor boarded the train while it was in motion and on the way to the tank; and, assuming that the evidence shows that the appellee was inside the caboose when the conductor entered

it and that the conductor discovered him as soon as he entered, still it was not the duty of the conductor to stop the train and put the appellee off before reaching the tank, which seems to have been the next stopping place.

When the train reached the tank it stopped to supply the locomotive with water, and the appellee and the other boys got off safely, and the evidence fails to show that the conductor, or any of the trainmen, saw the appellee after reaching the tank until after his foot was mashed. He was not carried to a place where danger was naturally to be apprehended, nor was there any evidence that indicated that the infant appellee was so deficient in intelligence, by reason of immature age, or the want of natural capacity, as to render it necessary that especial care and watchfulness should be exercised to prevent him from exposing himself to danger whenever it might become apparent. If this was necessary then his parents were at fault in failing to enforce obedience to their commands, which were given in order that he might be saved from harm. But as they trusted him to obey, they exhibited their belief that his intelligence was sufficient to enable him to appreciate the necessity. of avoiding contact with moving trains. But after all the immediate or proximate cause of the accident was the dislocation of the lumps of coal when his feet struck the pile, by reason of which his foot was turned and projected on the railroad track, where it was crushed by the car wheels.

It can not be said that the placing of the coal there on its right of way by the company for its own necessary use was negligence, or that it was likely to be the occasion of such an accident. And so it is clear that the injuries which the infant appellee suffered were not proximately caused by any

wrongful or negligent act or omission of the agents or ser-
vants of the appellant. We do not mean to be understood
as holding that the conductor was guilty of no wrong in in-
viting and taking on his train of cars young boys without
the knowledge or consent of their parents. We only mean
to say that whatever wrong he may have committed in this
regard respecting other boys on the day of this unfortunate
accident he was not on that day, according to the evidence
we have been considering, chargeable with wrong respect-
ing the infant appellee. And it follows from what has been
said that the court below erred in overruling the motion
made by counsel for the appellant for a peremptory instruc-
tion, and on that account the judgment in this case must be
reversed.

As the case must be tried again, it will be proper to refer
to some of the testimony introduced after the motion for
a peremptory instruction was overruled, and to pass on ex-
ceptions taken during the progress of the trial to the action
of the court in admitting and rejecting testimony offered,
and in giving and refusing requests for instructions. But
we shall do this for the most part in a general way, since
the views we have already expressed as to the law applica-
ble to the case are sufficiently explicit. After the motion
for a peremptory instruction was overruled by the court a
number of witnesses were introduced in behalf of the appel-
lant, and among them the conductor, P. J. Herb, who had
been in charge of the local freight trains between Howell,
Indiana, and Earlington, Kentucky, for twelve years.

The bill of exceptions contains no evidence introduced by
either party that showed that the conductor either invited
or induced the infant appellee to ride to the water tank on
the day he was injured, or that the conductor was aware

that he intended to board the train, or when he did so. The conductor testified that he did not know he was on the train until it was within about three-fourths of a mile from the tank, and that when he first discovered him he was on the front end of the caboose, which the conductor himself boarded while the train was in motion; that as soon as he saw him with some other boys there he made them get on the inside of the caboose, and that when the train stopped at the tank he ordered them off, and told them to stay off.

Another witness testified that he saw him and other boys standing on the steps on the front end of the caboose when the train had reached a point which was about half way between Sebree and the tank. Other witnesses, however, testified that they saw him in the caboose at about that time, showing a conflict in the testimony as to the time when he entered the caboose. These facts are important in this connection only as they show the character of the testimony on both sides that was finally submitted to the jury, and upon which the instructions of the court as to the law of the case were given. Over the objections of counsel for the appellant testimony was admitted to prove what was said by the conductor to the boys, including the infant appellee, about helping to take freight from the train and riding to the tank on days previous to the day on which the accident happened. This testimony ought to have been rejected. The case was between the infant appellee and the appellant, and the subject of the investigation was what occurred on the day the injuries were inflicted, and what occurred on previous days had no necessary connection with and was in no sense a part of the transactions of that day. For this reason also the court properly refused to allow proof to be made in behalf of the appellee of what it was

alleged the conductor and the trainmen said to the boys on occasions before that day about swinging on the ladders attached to the sides of the cars, and telling them to do this in order to learn to be "hoppers' and the like, and that the boys were in the habit of practicing in that way on previous occasions when they rode to the tank. The testimony of what was said by the conductor after the accident as to his having expected such an accident to happen ought not to have been admitted over the objections of counsel for the appellant, because these statements, if made, were not part of the *res gestae*, and although the statement as testified to by some of the witnesses included a protest by the conductor that it was not his fault, and that "if the boys had minded me Willie would not be hurt," still it was to the prejudice of the appellant, and being incompetent testimony it ought not to have been admitted by the court. True, the court excluded it before the case was submitted to the jury, but it was error from the first to admit it against the objection of the appellant. But after the conductor in his testimony denied that he made the statement attributed to him by the witnesses, or any recollection of it, and said that he did not make the statement in the presence of a certain witness, the court permitted that witness to testify over the objection of appellant's counsel that he did make the statement in his presence, but this testimony was admitted, as the court cautioned the jury, only for the purpose of contradicting the conductor. This was likewise error. The testimony of the conductor denying that he made the statement attributed to him was given before the evidence on the subject of his alleged statement was excluded as incompetent, and his denial that he made the statement in the presence of the contradicting witness was brought out on cross-

examination by counsel for the appellee. After the exclusion of the testimony as incompetent and irrelevant the conditions were the same from a legal standpoint as if it had not been admitted. Under these circumstances it was improper to permit the contradicting witness to testify that he heard the conductor make a statement which in itself was not competent or relevant to the issue on trial. This was an indirect method of getting before the jury the excluded testimony, and no cautionary words addressed by the court to the jury were adequate to remove from their minds the effect of such testimony. It is well settled by the authorities that this method of contradicting a witness is not proper. (Am. & Eng. Enc. of Law, volume 29, page 793; 1 Greenleaf on Evidence, section 462; Crittenden v. Commonwealth, 82 Ky., 164; Commonwealth v. Hourigan, 89 Ky., 311.)

Although some of the instructions given by the court contain a fair statement of the principles of law applicable to the case, yet, taken as a whole, they are not in accord with the views we have expressed. The same may be said of many of the requests that were refused by the court. The question regarding the degree of care that an infant is required to exercise to avoid injury in circumstances of peril becomes material in such cases as bearing on the question of contributory negligence when the evidence tends to establish negligence on the part of the person whom it is sought to make liable for the injury inflicted on the infant. The well-settled rule in such cases is that a child is required to exercise only such a degree of discretion and care as may be reasonably expected of children of his *age and intelligence* in any given circumstances of danger, but the mere immature age of the person injured can not be allowed to

have the effect "to raise a duty where none otherwise existed." (Nolan v. N. Y. & N. H. R. Co., 25 Am. & Eng. R. cases, 342.)

And none of the authorities make age the only test of the degree of care required of children in such cases. The abstract proposition of law embraced in instruction No. 5 that the infant appellee "was bound to exercise only such care as a boy of like age and discretion would ordinarily exercise under the same or similar circumstances" may be conceded. But as a single proposition, submitted without any connection with the acts of the infant appellee and the circumstances surrounding him, it was misleading and erroneous because of the implied assumption that the appellant was chargeable with negligence, and that a boy of eleven years of age, irrespective of intelligence and natural capacity, could not be held guilty of contributory negligence. (L. & N. R. Co., v. Hunt, 11 Ky. Law Rep., 825; Erwin v. St. Louis. &c., R. Co., 35 Am. & Eng. R. Cases, 390.)

On this line instructions "T" and "U," given at the instance of counsel for the appellant, are unobjectionable; and instruction "J," asked for by them and refused by the court, contains a correct statement of the duty of the conductor after he discovered the infant appellee on the train, and ought to have been given. After discovering him the conductor was under no obligation to stop the train to put him off short of the most convenient and reasonably safe place for that purpose. Instruction "A," asked for by counsel for the appellee, was properly refused by the court, because it was based on the assumption, without any evidence to support it, that the conductor *induced* the infant appellee to ride on the train on the day of the accident, and that he induced or permitted him to swing from it while it was in

motion, and for the further reason that it virtually made his immature age alone, without regard to his intelligence and natural capacity, the test of the degree of care required of him. (Van Natta v. People's Street Railway, &c., Co., *supra.*)

Instruction "B," asked for by appellee's counsel contained also the same unwarranted assumptions as were contained in instruction "A," and instruction "C" was the same as No. 5, and they were both properly refused by the court. With regard to the instructions given by the court on its own motion, without entering into details, we find that taken together they do not conform to our views as herein expressed of the law applicable to the case upon the evidence as set out in the bill of exceptions, and upon the return of the case the court will, in instructing the jury, conform to the principles of law as we have stated them.

. The other case of W. H. Webb, the father of the infant appellee in the first case, as we have stated, rests upon almost precisely the same facts in evidence. The two records presenting nearly the same question, our opinion in the first case settles the questions raised in the other. No testimony was introduced in behalf of the appellant and at the close of the testimony for appellee counsel for appellant moved for a peremptory instruction, which was refused, and which we are of the opinion ought to have been given.

For the reasons given the judgment in each of the cases is reversed and the causes remanded, with directions to set aside the verdict and award a new trial in each case, and for proceedings in each consistent with this opinion.