CASE 114—ACTION OF LUTHER WINSLOW AGAINST ILLINOIS CENTRAL
RY. CO., FOR DAMAGES FOR ABUSIVE AND INSULTING LANGUAGE
USED BY DEFENDANT'S SERVANTS TOWARDS HIM WHILE A PASSEN-
GER ON DEFENDANT'S TRAIN.—FEB. 21.

# Illinois Central Ry. Co. v. Winslow.

APPEAL FROM GRAVES CIRCUIT COURT—R. J. BUGG, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF.  DEFENDANT APPEALS.  REVERSED.

CARRIERS OF PASSENGERS—USE OF ABUSIVE LANGUAGE BY EMPLOYES—
EVIDENCE—QUESTION FOR JURY—ADMISSION OF EMPLOYE.

1. In an action against a railroad company for the use of abusive
   and threatening language by one of its employes to a passenger,
   evidence HELD to justify submission to the jury of the ques-
   tion whether the employe or the passenger was the aggressor.
2. The law implies a contract on the part of the carrier to protect
   a passenger from the the insults and wanton interference of
   strangers, fellow passengers, and the carrier and its servants.
3. In an action against a railroad company for the use of threat-
   ening and abusive language by a brakeman to a passenger,
   evidence that the brakeman, some time after the occurrence,
   said to witness that he started to slap plaintiff, and was sorry
   he did not do so, was incompetent.
4. In an action against a railroad company for abusive and threat-
   ening language used by an employe to a passenger, the em-
   ploye admitted the use of the language, but contradicted plain-
   tiff's testimony that he started towards plaintiff as if to assault
   him.  HELD, that this admission did not render harmless the
   introduction of incompetent evidence that the employe had af-
   terwards said that he started to slap plaintiff, and wished he
   had done so.

O. L. PRICE AND ROBBINS & THOMAS, ATTORNEYS FOR APPELLANT.

 1. This suit grew out of the fact that the flagman of appel-
lant's train asked the plaintiff, who was a passenger riding on
the caboose, not to spit on a hot stove which was used for
heating the caboose, at which plaintiff became angry and some
rough talk was used by both of them, but no attempt at physi-
cal injury was made.

Illinois Cent. R. Co. v. Winslow.

2. We submit that the court erred in permitting evidence to be given to the jury of statements made by the flagman concerning the difficulty, a day or two thereafter, in which he said "that he staited to slap a lung out of plaintiff and was sorry he did not do it." This was, no part of the *res gestae* and was objected to by appellant and we submit was clearly incompetent and was prejudicial to appellant.

## AUTHORITIES CITED.

Greenleaf on Evidence, vol. 1, sec. 113; Taylor on Evidence, vol. 1, sec. 588; Jones on Evidence, secs. 351, 360; C. & O. R. R. Co. v. Reeves' Admr., 11 R., 14; L. & N. R. Co. v. Ellis' Admr., 17 R., 259; L. & N. R. Co. v. Webb, 99 Ky., 332; Parker's Admr. v. Cumberland T. & T. Co., 25 R., 1391; Packet Co. v. Clough, 20 Wallace U. S., 528; Vicksburg & Meridian R. Co. v. O'Brien, 119 U. S., 99.

W. J. WEBB, ATTORNEY FOR APPELLEE.

We submit that the evidence shows in this case, that while appellee did once unthoughtedly spit on the stove in the caboose, he was not chewing tobacco, and it was not offensive, and that the flagman, who was a very large athletic man, while appellee was a small weakly man, in the presence of the conductor and the other passengers abused him and threatened to knock a lung out of him, appellee at the time being a passenger, and that the conductor did nothing to restrain the flagman, but acquiesced in it by his silence.

## AUTHORITIES CITED.

1. Peremptory instruction was not proper. Dallan v. Hanley, 2 Marshall, 424; Thompson v. Thompson, 17 B. Mon., 23.
2. Cause of action was established. Winegar's Admr. v. Cent. Passenger Ry. Co., 85 Ky., 553; Addison on Torts, vol. 1, p. 33; L. & N. R. R. v. Ballard, 85 Ky., 311, 88 Ky., 159; L. & N. R. R. v. Donaldson, 19 R., 1384; Memphis & Cin. Packing Co. v. Nagal, 16 R., 748; Dawson v. L. & N. R. Co., 6 R., 668; Strull v. L. & N. R. R. Co., 25 R., 678.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

Appellee, by verdict of a jury and judgment of the court below, recovered of appellant $200 in damages. It appears

from the statements of the petition that appellee, while a
passenger in a caboose of one of appellant's freight trains,
traveling from Wingo to Mayfield, Ky., upon a first-class
ticket, which he had purchased before taking the train, was
insulted and threatened with violence by appellant's brake-
man who was charged with the duty of seeing to the comfort
and safety of appellee and other passengers on the train;
that the alleged insulting, offensive, and threatening lan-
guage of the brakeman was addressed to appellee because he
had accidentally expectorated upon the stove of the caboose;
that all that was said and done by the brakeman was in the
hearing and presence of other passengers in the caboose, and
appellee was, by reason of the wrongful acts and miscon-
duct of the brakeman, subjected to great humiliation of
feeling and mental suffering, as well as bodily fear. The an-
swer contained a traverse of the material statements of the
petition, and pleaded the alleged misconduct of appellee in
expectorating upon the stove, which it was averred he per-
sisted in doing after being requested by the brakeman to de-
sist; that such use of the stove by appellee made a bad odor,
and was offensive to the other passengers, and, when po-
litely requested by the brakeman, as it was his duty to do,
to stop expectorating upon the stove, appellee became an-
gry, and created the only disturbance that occurred in the
car.

Two grounds for a reversal are presented by appellant's
counsel, viz: The admission by the lower court of incompe-
tent evidence in the trial, and the refusal of that court to
give to the jury a peremptory instruction to find for the
appellant when appellee's testimony was concluded.

A careful examination of the bill of evidence convinces us
that the court did right in refusing the peremptory instruc-
tion, as the evidence introduced by appellee was sufficient,

standing alone, to authorize a verdict for some amount in his behalf. Upon the other hand, that of appellant strongly tended to show that the altercation that occurred between appellee and the brakeman was caused mainly by the misconduct of appellee. In other words, the testimony of appellee himself was to the effect: That he expectorated upon the stove one time by accident. That, upon being reproved by the brakeman, Hamlet, therefor, he told him it was accidental, but, instead of accepting his excuse, the latter said to him, in an insulting and domineering manner: "What did you want to spit on that stove for? Was it to hear it fry? You better go home and spit on your grandmamma's bed, and see what she will do." That Hamlet continued to talk to appellee in an angry and insulting manner, and appellee said to him, "I understand what you mean, and I think you have said enough about it." Whereupon Hamlet turned to the conductor, who had just entered the caboose, and asked him if appellee was a passenger, and, upon being told that he was, he said, again turning to appellee, "If you wasn't, damn you! I would knock your lungs out." Upon being told by appellee, "No, he wouldn't, either," he said, "Yes, I would," and started toward appellee, who, according to his further statements, said no more, as he was afraid Hamlet would strike him. Two of the passengers—a man and a woman—corroborated appellee in large measure, though they did not hear all that was said by either appellee or the brakeman. Their testimony, however, went to show that the brakeman's language was rough, and his conduct aggressive, and both heard him say, if appellee were not a passenger, he would slap a lung out of him. For the appellant three witnesses were introduced—Hamlet, the brakeman; Parker, the conductor; and Saxon. Hamlet's testimony was, in substance, as follows: "It was a very

cold evening and we were coming this way on 192—the local freight, coming north; and this gentleman was sitting there spitting on the stove, and I asked him to stop it. There were some old ladies in the car, and one in particular was coughing right smart, and it seemed to me it was offensive to her. It was offensive to me, and I use tobacco myself; and I remarked to him, 'If you was to spit on your mother's stove, she would take a stick of stove wood and blam you up by the side of the head with it;' and he seemed to get highly insulted, and he says, 'You have said enough; don't speak to me any more;' and spoke very loud, and I asked the conductor if he was a passenger, and he says, 'Yes;' and I says, 'It is a very good thing he is; I would slap a lung out of him.' " The conductor corrobrated Hamlet in full, but Saxon's statements were more corroborative of appellee's testimony than of Hamlet's.

It is evident from Hamlet's testimony that he was angry, and his manner aggressive, on the occasion in question; and, if the jury placed full credit in the testimony of appellee and his witnesses, they, no doubt, came to the conclusion that Hamlet was insulting, and his manner threatening, not to say violent. At any rate, it was the province of the jury to determine whether his conduct was such as to justify a verdict for damages against appellant, whose servant he was With reference to the duty of a common carrier towards its passengers, "the doctrine is now well established that the law implies a contract for the protection of the party carried from the insults and wanton interference of strangers, fellow passengers, and the carrier and its servants, and for every violation of the implied contract by force or negligence the carrier is liable in an action of contract or tort." Addison on Torts, vol. 1, p. 33, note, and authorities there cited.

In discussing this doctrine in Winnegar's Adm'r v. Central Passenger Railway Co., 85 Ky., 547, 9 R., 156, 4 S. W., 237, this court said: "It is not material whether the violation consists in putting the passenger off at a point before his destination is reached, or by insulting him, or in assaulting him. They are all plain violations of duty, for which a recovery may be had." Again in the same case the court further said: "The law makes the carrier responsible for the acts of the person in charge of the car, and who for the time has the voluntary custody of the passenger, with the implied obligation that he will exercise the highest degree of diligence to transport him safely. In Goddard v. Grand Trunk Railway, 57 Me., 202, 2 Am. Rep., 39, it was held that the carrier was obliged to protect his passengers from violence or insult, from whatever source it arises. He must use all such reasonable precautions as are necessary for that purpose." L. & N. R. Co. v. Ballard, 85 Ky., 311, 9 R., 7, 3 S. W., 530, 7 Am. St. Rep., 600; Same v. Same, 88 Ky., 159, 10 R., 735, 10 S. W., 429, 2 L. R. A., 629; L. & N. R. Co. v. Donaldson, 43 S. W., 439; 19 Ky. Law Rep., 1384; Memphis & Cincinnati Packet Co. v. Nagel, 29 S. W., 743, 16 Ky. Law Rep., 748; Dawson v. L. & N. R. Co., 6 Ky. Law Rep., 668; Strull v. L. & N. R. Co., 76 S. W., 181, 25 Ky. Law Rep., 678.

We deem it unnecessary to comment upon the instructions given by the trial judge, as no complaint is made of them by counsel for appellant. It is only insisted that a peremptory instruction should have been given. It is enough to say that the instructions were as favorable to appellant as it could have been asked.

It is, however, complained that the substantial rights of appellant were prejudiced by the admission of the testimony of Elvis Lamb. This witness was introduced in chief for appellee for the purpose of proving by him a conversation

with appellant's brakeman, Hamlet, a few days after the altercation between the latter and appellee, out of which this action arose. It appears that Lamb arrested Hamlet under a warrant charging him with some offense connected with his treatment of appellee on appellant's train, and that Hamlet was fined in a police court for the offense charged, and it was on the day and at the time of the trial that the conversation in question took place. Lamb was permitted by the court to testify as to that conversation, and he said Hamlet told him, in substance, if it was going to cost him anything, he wished he had slapped a lung out of appellee, and that he started to slap a lung out of him, and was sorry he didn't do it. This testimony was clearly incompetent. In Greenleaf on Evidence, vol. 1, section 113, we find this statement of the law: "The party's own admissions, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency, in regard to a transaction then depending, *et dum fervet opus*. It is because it is a verbal act and part of the *res gestæ* that it is admissible at all, and therefore it is not necessary to call the agent himself to prove it, but, whenever what he did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it; and it follows that, where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being mere heresay." Taylor on Evidence, vol. 1, sec. 588. In C. & O. R. Co. v. Reeves' Adm'r, 11 S. W., 464, 11 Ky. Law Rep., 14, the above rule of evidence was considered, and in discussing it the court said: "The testimony of the witness as to the conversation with Hinch, the conductor, in which he is said to have admitted his neglect, was incompetent.   *   *   *   In

this case the conversation occurred after the accident happened, and after the conductor had left the station, when he was expressing his regret caused by the occurrence, and attaching blame to himself for the injury to the unfortunate man. If this conversation with the witness is to be regarded as a part of the *res gestae* then the agent by his declarations can bind his principal after as well as at the time the accident happened or the transaction takes place." L. & N. R. Co. v. Ellis' Adm'r, 30 S. W., 979, 17 Ky. Law Rep., 259; L. & N. R. Co. v. Webb, 99 Ky. 332, 18 R., 258, 35 S. W., 1117; Parker's Adm'r v. Cumberland Tel. & Tel. Co., 77 S. W., 1109, 25 Ky. Law Rep., 1391.

It is insisted that the proof of the statements of the brakeman, Hamlet, were not prejudical, in view of his admissions made on the trial of this case of what he said to appellee. All that he then admitted saying to appellee was, if he were not a passenger, he would slap a lung out of him; but in his conversation with Lamb the statement calculated to prove hurtful to appellant was that he started to slap a lung out of appellee, and was sorry he had not done so. The statement was a corroboration of appellee's testimony that he started towards him as if to strike him. We can well imagine that it must have had great weight in causing the jury to find for appellee At any rate, it was not part of the *res gestae*, and therefore incompetent, and the court should have excluded it.

Appellee, upon the cross-examination of Hamlet, might have laid the foundation for contradicting him by obtaining his denial of the statements attributed to him by Lamb, in which event Lamb could have been introduced in rebuttal to prove the statements; but even then it would have been the duty of the court to tell the jury that the statements as testified to by Lamb might be considered by them,

not as substantive evidence, but only for the purpose of contradicting and discrediting Hamlet.

Because of the error of the court in admitting proof of the conversation between Hamlet and Lamb, the judgment is reversed, and cause remanded for a new trial and other proceedings consistent with the opinion.

Petition for modification of opinion overruled.