### ANSLEY VS. PETERSON.

EVIDENCE: (1) *Letter from commissioner of land office, when admissible.* (2) *Whether an exemplification from records of land office is admissible, quære.* (3,4) *Nature of testimony admissible to prove alterations of written instruments.*

1. In ejectment, where it became important for plaintiff to show that he located the land under a bounty warrant in 1865, and *not* in 1854, a letter from the commissioner of the general land office to him, dated Dec. 12, 1865, proposing that plaintiff should accept and locate said land in lieu of another tract, which he had formerly located under the same warrant (such first location having been cancelled), was admissible in evidence in his behalf, his letter accepting the proposal being also in evidence. The commissioner being the agent of the government for transacting such business, the letters were the best evidence of the contract between plaintiff and the government.

2. Whether a copy, certified by said commissioner, of a "statement on the records of this office [the general land office] in relation to the location, cancellation and re-instatement thereof, with [a certain numbered] bounty land warrant, for forty acres, act of 1850, by T. A. [the plaintiff]," and "a true and literal exemplification thereof, taken from the said record," were admissible in evidence, *quære.* If such a statement of record is required or authorized by an act of Con-

gress or the practice of the land department, perhaps a duly certified transcript of it would be admissible; otherwise not.

3. It being necessary for plaintiff to show that a duplicate certificate of the entry of land by him, under said warrant, issued by a federal land officer in this state in 1854, and sent by him to the general land office in 1865, was altered after it reached the latter office, he might show it by the testimony of witnesses who had seen the instrument prior to such alteration, but who had not been present when the alterations were made.

4. Alterations in written instruments may also be shown by duly certified fac-similes or exemplifications thereof, when the party has no power to produce, nor the court to compel the production of, the instruments themselves, as where they are public records beyond the jurisdiction of the court.

APPEAL from the Circuit Court for *La Fayette* County.

Action of ejectment; the opinion states the case; verdict and finding for defendant, and a motion for a new trial being overruled, plaintiff appealed.

*P. A. Orton, Jr.*, for appellant.

*Henry S. Magoon, contra*, argued, among other things, that the certificate of the commissioner of the general land office, *reciting a history*, was properly excluded, since such certificate could not take the place of a deposition by the commissioner, and because no law of congress or of the state authorized the substitution of such certificate for a deposition. *Gates v. Winslow*, 1 Wis., 650; *Bigelow v. Blake*, 18 Wis., 520; *Farrand v. Northwestern R. R.*, 21 Wis., 435; *Hammond v. Norris*, 2 Har. & J., 130; 1 Wash. C. C., 333; 4 Cranch C. C., 466; 17 How., 611.

LYON, J. Ejectment for the S. E. ¼ of the S. E. ¼ of section 24, in township three, north of range four east, in La Fayette county. The plaintiff claims title by patent from the United States, and the defendant under a tax deed. The controversy turns upon the true date of entry or location by the plaintiff of a military land warrant upon the land, whether the same was the 27th of July, 1854 or the 29th of December, 1865.

The plaintiff insists that the latter was the true date of his location, whilst the defendant contends for the former.    The patent to the plaintiff bears date February 10, 1866.    To determine this controversy it became necessary upon the trial for the plaintiff to explain or show that certain alterations had been made in the certificate of location and in his application to locate, both of which now appear upon the files of the general land office at Washington as the foundation of his title, and purporting to give the date of July 27, 1854, as that of the location.    The application and certificate on file in the general land office are the same made and issued at the local land office at Mineral Point, in this state, on the 27th of July, 1854, and subsequently transmitted to Washington, and the effort on the part of the plaintiff was to show that the alleged alterations had been made without his knowledge or consent by some person in the general land office, and after the papers had been filed there.    The alteration claimed in the certificate consisted in the erasure of the letter " N " and substitution of the letter " S," in the description " S. E. quarter," as it now occurs, thus making the certificate read, " S. E. ¼ of *S.* E. quarter," instead of " S. E. ¼ of *N.* E. quarter," as originally made.    The alteration claimed in the application was similar, that the "*N*" had been changed to an "*S*," and the letter "*r*" to "*u*," in the word "*North*," so that it reads "South East quarter of *South* East quarter," in place of " South East quarter of *North* East quarter," as first made and signed by the plaintiff.

The controversy arose and the alteration is shown to have come about in this way. . On the 27th of July, 1854, the plaintiff applied at the local land office to locate military land warrant numbered 84,490, issued under the act of congress of September 28th, 1850, upon the south east quarter of the *north* east quarter of the section, and his application was received and the location made and the proper duplicate certificate issued.    Upon the application with warrant annexed and the certificate being forwarded to the general land office at Washington for the patent

to issue, it was ascertained that the location conflicted with a prior one made on the 17th of October, 1851, and the same was accordingly cancelled by direction of the commissioner. This took place February 23d, 1856, and the plaintiff was notified of the cancellation through the local office. Thus matters rested until December, 1865, when, the land warrant of the plaintiff still remaining in the possession of the government, some correspondence took place between him and the commissioner of the general land office, in which the latter proposed to the plaintiff to accept of the south east quarter of the *south* east quarter of the same section which was yet vacant and subject to entry or location in place of the south east quarter of the *north* east quarter, first located or attempted to be with the warrant; and the plaintiff accepted such proposal and immediately transmitted to the commissioner his duplicate certificate of the first attempted location in order that he might receive a patent for the tract of land last described. This appears from the copy of the plaintiff's letter to the commissioner dated December 19th, 1865, which comes certified from files of the general land office under the seal of that office and the signature of the commissioner, and which was received in evidence on the trial below. On the 29th of the same month the commissioner notified the register and receiver of the local office, then removed to La Crosse, of the change or substituted location, speaking of it, however, as the location originally made " and erroneously cancelled February 23d, 1856," and which he said " has been reinstated upon the south east quarter of *south* east quarter, 24, 3, 4, which action you will note in a proper manner upon your records." As already stated the patent was issued to the plaintiff on the 10th of February following.

The evidence introduced by the defendant to show that the location was made in July, 1854, and consequently that the land was taxable in 1857, when the taxes were levied under which he acquired his deed, consisted of certified copies from the general land office of the certificate and application in their

alleged *altered* form. On the back of the application to locate, however, were written in red ink, in order to make the copy correspond with the original on file, the words and figures following: "Location cancelled Febr'y 23, '56, S.", and over or through the same was drawn a line of erasure in black ink, and immediately underneath, in the same kind of ink, was written: "Cancellation rescinded Dec. 29, 1865, Turner."

To rebut the case thus made by the defendant, the plaintiff introduced fac-similes or exact exemplifications of the application and certificate as they appeared on the files of the general land office, duly authenticated by the signature of the commissioner and seal of the office, and to which was attached a note, marked " A," "for explanation of erasures and corrections," as stated and referred to by the commissioner in his certificate. From these exemplifications, now before us for inspection, it appears very plainly that the letter "*N*" in the word "*North*" in the application has been erased, and the letter "*S*" substituted. Parts of the letter "*N*," as once written, are still visible, the same not having been completely erased. The change of the letter "*r*" to a "*u*" also clearly appears. The letter, as now, is awkward and contracted for want of space, and clearly remodeled from the former "*r*."

Written across the face of the same document and erased by a line running through them are the following words and figures: "Location cancelled, see letter to R. and R., Feb. 23, '56, S." By "R. and R." we understand register and receiver of the local land office. Upon one margin and on the face of the paper is the following endorsement in writing: "Location reinstated, Dec. 29, 1865. See letter to R. and R., La Crosse, Wis." The following written entries also appear upon the opposite margin: "See letter from locator, Dec. 19th, 1865, accepting SE. SE. 24, 3 U. 9—67, 904. Turner." See Regr's Report, April 15th, 1856, filed with Wt. 24, 185, 160, 1850, Turner."

And in the certificate the erasure of the " N " and writing of

the "S," in description "S.E. quarter," is equally obvious. Some of the lines of the former letter "N" quite clearly appear, notwithstanding the attempt made to remove them.

The note "A." attached to these exemplifications, reads as follows: "Note.—The only erasure and correction found in the papers referred to, consists in changing the description of the land in the application and duplicate certificate from the S.E. ¼ of N.E. ¼ to S.E. ¼ of the S.E. ¼, as per report of the register and receiver of July 15th, 1856, which states that the records of their office show that warrant No. 84,490 was located on the S.E. ¼ of S.E. ¼, Sec 24, T. 3, R. 4, E. ; and Thomas Ansley's letter of acceptance, dated Dec. 19th, 1865, which states: "In conformity with your proposal, I accept of the S.E. ¼ of the S.E. ¼, 40 acres, in place of S.E. ¼ of N.E. ¼, located with military land warrant No. 84,490, sec. 24, 3, 4 E."

In addition to the foregoing and authenticated by the same certificate of the commissioner, was a copy of the entry of the location made at Mineral Point, Wisconsin, land office, with bounty land warrant No. 84,490, for forty acres, by *Thomas Ansley*, on the 27th day of July, 1854, as taken from the abstract of locations reported to the general land office, by the register and receiver of the land office at Mineral Point, for the month of July, 1854, and still on file in the general land office. This abstract showed the location at that time to have been made upon the south-east quarter of the *north*-east quarter of the section.

The other evidence which the plaintiff was permitted to give, consisted of a duly certified copy of his letter to the commissioner dated December 19, 1865, and a copy of the letter of instructions of the 29th of the same month, addressed by the commissioner to the register and receiver of the land office at La Crosse.

Having first established its genuineness by the testimony of a witness and also the official character of the writer, the plaintiff offered in evidence an original letter from the commis-

sioner of the general land office to himself, dated December 12, 1865. The letter was objected to and was rejected. The letter was the same alluded to in the letter of the plaintiff to the commissioner, dated the 19th of the same month, and which was in evidence, and the purpose of the offer appears to have been to show the proposal of the commissioner to the plaintiff to accept the S.E. qr. of the S.E. qr. in lieu of the S.E. qr. of the N.E. qr. of the section, which proposal, it appeared, the plaintiff had accepted in his answer to the communication. We see no objection to the offer and no reason why the letter should not have been received. It differs entirely from the question presented in *Bovee v. McLean*, 24 Wis., 225. The plaintiff was negotiating with the government through its proper department, the land office, for the purpose of getting back his land warrant, or having the matter in some way properly arranged, and he received the proposition contained in the letter, which he subsequently accepted, and the business was consummated in that manner. As an agent of the government, representing its rights and interests and authorized to contract for it, the commissioner could do so by letter, and his letter, submitting a proposition which had been accepted, was admissible in evidence. It was admissible for the purpose of showing what the contract was, and was the highest and best evidence which could be adduced.

Whether the document certified by the commissioner to be a " copy of a statement on the records of this office, in relation to the location, cancellation and re-instatement thereof, with bounty land warrant No. 84,490, for 40 acres, act of 1850, by Thomas Ansley," and " a true and literal exemplification thereof, taken from the said record," was admissible in evidence or not, is a point of more doubt. If such a statement of record is required or authorized by the laws of congress or the established practice of the land department, then perhaps a duly certified transcript of it would be admissible, but otherwise not. We are not informed as to the laws of congress on this subject nor the practice of the land department.

But the proof offered by the testimony of the plaintiff and of the witness Hill, to show that the duplicate certificate issued to the plaintiff on the 27th of July, 1854, and held by him until December 12th, 1865, when it was sent to the commissioner at Washington, had been altered after it reached the general land office, without the knowledge, consent or authority of the plaintiff, was admissible. It is true the witnesses did not propose to testify that they were present and saw the alteration made, or that they knew who made it, but only that they knew the fact that it had been made. Better or more direct evidence than this of an alleged alteration of a written instrument can seldom be produced, and we are at a loss to perceive upon what ground it was rejected.

But without the aid of any of the documentary evidence and testimony which was offered and rejected, we think the alteration was very clearly and sufficiently shown by the evidence which was admitted. The evidence admitted, leaves not the slighest doubt in our minds, and it seems from the language of the charge that it would not have left any in the mind of the learned judge, before whom the cause was tried, had the case been one where the altered writings themselves were produced and exhibited before the court and jury. He charged the jury: "On consideration, I do not think that any of the testimony introduced by the plaintiff is admissible to prove an alteration of written instruments not before the court." It is very true that the original instruments, could they have been produced, would have afforded much more satisfactory evidence. But in this case it was impossible to produce them, since no subpœna would take them out of the land office or compel an exhibition of them in court. The plaintiff produced the next best evidence possible, fac-similes or copies as literal and exact as could be made, duly authenticated as required by law, and no more could be required of him. By this and other means and evidence he established the alteration very satisfactorily, and was entitled to the benefit of the proof. Why the alteration

was made so as to give a false date to his location and to show the title out of the United States and into him, years before he purchased the land or thought of doing so, and while it still remained the property of the United States, it is immaterial now to inquire. It may be surmised, however, that it was for mere convenience in transacting the business in the general land office, and to avoid the delay and expense of a new application and certificate, and at the same time to have the records and files in the office conform to the location actually made. But whatever the motive may have been, the title of the United States did not pass, and the plaintiff acquired no interest in the land until December, 1865, and, instead of instructing the jury to find for the defendant, the court below should have instructed them to find for the plaintiff. The land not having been taxable at the time of the alleged levy and assessment under which the defendant obtained his tax deed, he acquired no title and cannot hold as against the plaintiff.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.