A. B. COLLINS v. TEXAS & PACIFIC RAILWAY CO. ET AL.

Delivered January 23, 1897.

**Railway Company—Lease of Train—Insult to Passenger—Liability.**
  Where two railway companies, for a consideration equally shared by them, under-
take to carry a train of excursionists over their respective lines, they are jointly and
severally liable for any damages occasioned by the neglect of either in the perform-
ance of any duty imposed upon common carriers; and this although they have
leased the train outright for the trip, and the tickets are sold and taken up by the
lessee.

APPEAL from the County Court of Tarrant. Tried below before
Hon. GEORGE W. ARMSTRONG.

*R. L. Carlock* and *Martin & Smith*, for appellant.

*Stanley, Spoonts & Thompson*, for appellee Texas & Pacific Railway
Co.

*W. A. Bonner*, for appellee Weatherford, Mineral Wells & North-
western Railway Co.

HUNTER, ASSOCIATE JUSTICE.—Appellant's wife bought a ticket
from the International Association of Machinists for herself and two
children. The ticket read as follows: "First Annual Excursion, Fort
Lodge No. 75, International Association of Machinists. To Mineral
Wells and Return. Sunday, April 21, 1895. Round trip One Dollar."
Said ticket was stamped with the seal of the association.

These tickets were not issued by the railroad companies, but were
issued and sold by the association aforesaid, but entitled the parties
holding them to passage on a certain excursion train run on the day named
from Fort Worth to Mineral Wells and return, over the Texas & Pa-
cific railroad to Weatherford, and over the Weatherford, Mineral Wells
& Northwestern railroad from Weatherford to Mineral Wells. The
machinists' association took up the tickets on the train, and received all
the proceeds and profits of the excursion. The Texas & Pacific Rail-
way Co. made a contract with the International Association of Machin-
ists to furnish an engine and six passenger coaches, with an engineer
and fireman, brakemen and conductor, on the day named, to carry the
excursion party from Fort Worth to Mineral Wells, for the sum of
$200, cash paid in advance, which it received. Of this sum $100 was
intended for and was paid to the Weatherford, Mineral Wells & North-
western Railway Co., for its share of the proceeds of the excursion.

The coaches furnished by the Texas & Pacific company were to and
did run through to Mineral Wells, but at Weatherford the Mineral
Wells & Northwestern company took charge of them, and carried them
to Mineral Wells and back to Weatherford, by its engine and train crew.

Each railroad company furnished a conductor, engineer, fireman, and brakeman to accompany the train while on its road, but the arrangement was that the conductors and brakmen only accompanied the train to take care of it, and see that it was not injured by collisions or otherwise, but were to have nothing to do with the collection of tickets or fares, nor with who should ride in the coaches, nor what amount should be charged for the passage, but all this was to be exclusively under the control of the machinist association.

About three hundrd persons took passage on this train, and as they were "on pleasure bent," when the time for returning came many of them came back to the train at Mineral Wells intoxicated, and some acted very disorderly at the station before the train left for Weatherford, and on the way back to Weatherford they were rude and boisterous, and were guilty of obscene, vulgar, and insulting language and conduct in the presence of appellant's wife. She appealed to those of the association who seemed to be in charge of the excursion for protection, but none was afforded. The railroad conductor, evidently under the impression that he had no right to interfere or in any manner undertake to control the excursionists in their conduct towards one another, made no effort to keep order on the train or protect anybody from the insults and obscenity of this drunken gang.

The County Judge, upon this evidence, charged the jury peremptorily to find a verdict for the defendant railway companies, evidently upon the theory that the companies' conductors and brakemen in charge of the trains respectively owed no duty to the excursionists, for the reason, as he no doubt conceived, that they were not passengers of the railway companies, because they had not bought railway tickets.

Both companies contended that the excursionists were not passengers of the railway companies, and that their conductors respectively owed no duty to them, more than to see that the trains were properly and safely run and operated during the excursion; and the Texas & Pacific company contended that, as none of this misconduct occurred on its line, it would not be liable in damages therefor.

We are of opinion that neither of these propositions can be sustained, and that both and each of the defendant companies are liable. It was a joint undertaking on the part of the two railroad companies to carry the excursionists from Fort Worth to Mineral Wells and return, and for this the Texas & Pacific company was paid a single consideration of $200. The contract was made with the Texas & Pacific company, for the joint benefit of both companies, and the undertaking being a joint one on the part of both companies, and both sharing equally in the profits, it was in the nature of a partnership, and both companies were jointly and severally liable for any damages occasioned by the neglect of either in the performance of any duty or care imposed by law upon common carriers of passengers.

It is well settled that a railroad company cannot lease its road to another, without the consent of the Legislature, so as to absolve itself

from its duties to the public as a common carrier, or avoid liability for damages occurring on its line of road to the public, although another company may be operating the road and in full and exclusive control thereof, and, of course, selling the tickets to persons who are passengers thereon.   And we can see no reason why the same rule should not apply in cases where the railroad company lets or hires its trains or coaches or engines to another corporation, company or person for a day or trip. Railway v. Underwood, 67 Texas, 589; Railway v. Rushing, 69 Texas, 306; Railway v. Moody, 9 S. W. Rep., 465; Railway v. Lee, 9 S. W. Rep., 605; Railway v. Garteizer, 29 S. W. Rep., 931.

We are cited to Railway v. Culberson, 72 Texas, 375, as authority in favor of appellees' non-liability, but that case clearly recognizes and reiterates the doctrine we hold here, but decides that the lessor company would not be liable for injuries to the servants of the lessee company occasioned by the negligence exclusively of their own master.

That a railroad company is bound to protect its lady passengers from insult and abuse, obscenity and wanton approach, see Railway v. Jones (decided at the present term of this court), 39 S. W. Rep., 124; Railway v. Ballard, 3 S. W. Rep., 530; Com. v. Powers, 7 Mich., 596; Cracker v. Railway, 30 Wis., 657; Railway v. Osborn, 30 S. W. Rep., 21.

In the Osborn case, last cited, the Court of Civil Appeals of Kentucky hold the railway company liable for the acts of the charterer of the train for an excursion in forcibly ejecting from the steps of the excursion train a person who held a ticket issued by the railroad company.

We can perceive no difference in the duties of the railroad company to the public, in case it sells the tickets to each passenger, and in the case where it gives or sells this privilege of issuing tickets to any other corporation or person.   The State has granted it the right to exercise all the powers and privileges of a railroad corporation, which in some instances very nearly approach sovereignty, and it, in turn, is bound to the public to see that passengers on its trains and in its coaches are protected in their rights as such, regardless of who may sell the tickets or collect the fares.   The duty is one of which they cannot relieve themselves, by contract or otherwise, without the consent of the Legislature.

The judgment is therefore reversed and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*