MOORE *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered January 27, 1900.

RAILROAD—LEASED TRAIN—EXCLUSION OF PASSENGER.—A railroad company which leased a train of cars to a picnic association for the purpose of carrying a party of excursionists to the picnic grounds, and gave to the association the right to designate who should ride on the train, will be liable in damages to the holder of a ticket purchased from the picnic association who was arbitrarily ejected from the train by the managers of the picnic association, although her ticket read: "This ticket will be refused, if presented by any objectionable person." (Page 394.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

### STATEMENT BY THE COURT.

The complaint charged that defendant was a common carrier, operating a railroad between Little Rock and Benton; that on the 23d day of May, 1894, she purchased a ticket from Little Rock to Benton, and entered one of defendant's passenger cars, upon one of its trains, and took a seat therein as a passenger, for the purpose of going to Benton; that, after she had taken her seat, one of the agents of defendant in charge of said

train maliciously, without cause, and against the will and pro-
test of the plaintiff, and to her shame and mortification, com-
pelled her to give up her ticket, and wiᵗʰ insulting and con-
temptuous language, and by force, ejected her from said train
at the said city of Little Rock; that upon said ticket was con-
spicuously printed these words: "This ticket will be refused
if presented by any objectionable person;" that defendant's
agents, at the time they ejected plaintiff as aforesaid, took said
ticket from her, in the sight of all the other passengers, and
thereby wilfully, maliciously and publicly stigmatized her as
being an objectionable, unworthy and disreputable person, unfit
to be in said coach.    Whereby she was damaged in the sum of
$50,000.

   To this complaint the following answer was filed: "Comes the
defendant, and files herein its answer, and for defense to said cause
of action it says:    "That on or about the 22d day of May, 1894,
a committee from the Union Picnic Association of Little Rock ap-
plied to this defendant for the express purpose of hiring a number
of cars in order to enable them to haul such persons as they might
select or designate to a picnic to be given by them at the Saline
river, Saline county, Ark.    Such understanding was then had
between said committee that the defendant agreed to hire to said
committee seven cars for the sum of $200 cash, which was then
and there duly paid.    By said agreement, it was expressly un-
derstood that said picnic association were to have entire control
of said cars, and were to designate who should go upon the
same.    It was further understood and agreed that the said cars
should be pulled by defendant's engine in charge of defend-
ant's engineer and fireman, and that said train should be
under the care and control of defendant's conductor in the
movement and operation of same, to the end that this de-
fendant might be protected and held harmless by the care-
ful management, running and operation of said cars.    After
said train had been specially hired, and the consideration
therefore duly paid by the said Picnic Association of Little
Rock, the said association advertised said picnic, and proceeded
through its committees and agents, over whom this defendant
had no authority or control, to sell their tickets to whomsoever

they chose. The said tickets were in words as follows: 'No. 765. Union Picnic. Little Rock to Benton and return. Wednesday, May 23, 1894. Under the auspices of Division 131, O. R. C.; Division 182, B. of L. E.; Lodge 45, B. of L. F.; Lodge 75, S. M. A. A.; Lodge 49, B. of R. T. Round trip tickets, 50 cents. Trains leave Argenta: 8:00 a. m. and 1 p. m. Trains leave Little Rock: 8:30 a. m. and 1:30 p. m. This ticket will be refused if presented by an objectionable person.' Upon the back of said tickets, when they were sold, was stamped the following: 'Picnic Association of R. R. Men, Little Rock and Argenta. Organized April 21, 1892. Grounds and Pavilion.' Defendant says it had no part or hand in selling said tickets; that it did not authorize the same, nor did it receive any benefit whatsoever from the selling of the same, or the proceeds thereof; but it says that the said ticket was a means adopted by the said Picnic Association whereby they chose to designate the persons who were to ride upon said cars so specifically hired and engaged by itself. Afterwards, to-wit, on the 23d day of May, 1894, this defendant, in accordance with said contract, drew up a train of cars at the Union Depot, in the city of Little Rock, for the use of said hirers, and then and there the said hirers proceeded to take charge of the same in designating the parties who were to go upon the same, and in seeing that no parties went upon the same that they did not desire to be there; and while said committee advertised the excursion, and offered the tickets for sale to whomsoever they chose, they exercised their own discretion in putting off the train any particular person whom they were unwilling to allow to remain on the train. Defendant says that neither defendant nor defendant's servants had anything to do with the loading of said cars, or the designation of who should go thereon. It did not put plaintiff onto said cars, nor did it refuse to let her ride thereon, but it says that the said Picnic Association committee, who had specially hired and paid for said train for their own especial and exclusive use, alone had the right to designate who should ride thereon. Defendant further says that it is informed that plaintiff was put off of said cars at the Union Depot by order of the said

committee, for the reason, it is informed, that said committee did not desire her to ride upon said train.  Defendant further says that it knows nothing of this; that at the time it knew nothing of it; that it took no part in the same; and that defendant's conductor and officers in charge of the operation of said train knew nothing of the same, were not present, and did not know the same had taken place until the institution of this suit.  Defendant further says that neither defendant, nor its servants, took up the tickets on said cars, nor assumed any control over the same, further than was necessary in operating and the safe management of said train, in seeing that it should be safely carried to and from the points of destination.

Defendant further says that there was no negligence, maliciousness or improper conduct on the part of its servants, agents or employees towards the plaintiff in this suit, and it says that if plaintiff was put off of said cars, it was done by said Picnic Association, who had specially hired said train for their own use, and who had the right to designate who should ride thereon, and that defendant is therefore in no manner responsible for the same.  Defendant further says that it denies that, while hauling said train, it was a common public carrier, but that, by virtue of the agreement made between it and the Picnic Association, it was acting as a private carrier for the special purpose, under a special agreement.  It denies that said train was a public passenger train, but says it was a special private excursion train, hired especially to the said Picnic Association of Little Rock.  Said train did not run on schedule time, nor at the times when its regular passenger trains were run, but it says that the said train was hauled by this defendant at such times as the said association asked and designated. Defendant further says that, if the said plaintiff desired to go to Benton, she could have done so on that day, either on the early local freight train, a regular passenger train of this defendant, leaving Little Rock at 6 o'clock a. m., or she could have gone on the "Cannon Ball" train, a regular schedule passenger train leaving Little Rock at 8 a. m., or she could have gone upon the Hot Springs special passenger train, leaving Little Rock at 9:30 a. m., or on the regular noon day

passenger train leaving Little Rock at 1:45 p. m., but it said that she had no right to ride upon said excursion cars, if said parties hiring the same did not so desire.  Therefore, defendant says that it is in no manner responsible for any pain or mortification suffered by plaintiff by reason of the hirers of said train electing to put her off the same, but says that said acts were the acts of those who had specially hired said train, over which this defendant had no authority or control, in the exercise of their rights to say who should ride upon their train. Wherefore defendant prays to be dismissed with all of its costs."

To this answer plaintiff demurred, upon the grounds that it did not state facts sufficient to constitute a defense.  The demurrer was overruled, plaintiff saved her exceptions, and, electing to stand upon the demurrer, judgment was rendered in favor of defendant, and plaintiff appealed.

*Carmichael & Seawel,* and *W. S. & F. L. McCain,* for appellant.

A railroad company can not let or hire out its trains to third persons, so as to escape liability for the wrongful acts of such third persons to passengers.   20 S. E. 191; 30 S. W. 21; 39 S. W. 643; 17 Wall. 445; 5 Wall. 90; 19 Am. & Eng. Enc. Law, 899; 102 U. S. 451; Hutch. Carr. § 563; 21 Am. & Eng. R. R. Cas. 233, 7 *id.* 413; 26 *id.* 611; Patt. Ry. Acc. Law, 132 n.; Beach, Priv. Corp. § 336; 20 Ill. 623; 2 Am. & Eng. Enc. Law, 756; 3 S. W. 460; 9 S. W. 604; 4 S. W. 216.

*Dodge & Johnson,* for appellee.

Since the refusal of the "Picnic Association" to allow appellant to ride was without appellee's knowledge or consent, it is not liable.   27 L. J. Exch. 155; 51 Fed. 171; 34 N. Y. 9; 157 Pa. St. 103; 30 Fed. 208; 96 Ind. 360; 119 Ind. 583; 43 Ia. 276; 37 La. Ann. 705; 39 La. Ann. 649; 53 N. J. Law, 169; 58 Am. & Eng. R. Cas. 191; 32 N. Y. Stat. Rep. 381; 35 Hun, 390, Affd. in 104 N. Y. 683; 73 Hun, 562; 20 Phila. Rep. 258; 81 Tex. 273, S. C. 12 Am. & Eng. R. Cas. 175.   Appellee's only obligation was for making up and running of the train, and the safety of the cars and

the protection of the passengers while operating said train of cars; and the hirer was responsible to appellant, if anyone was. 20 Ill. 623; 2 Ell. Railroads, § 473; 156 Mass. 526; 27 Ga. 539; 56 Mich. 113; 97 Mo. 521; 61 Fed. 607; 13 S. W. 693; 62 Fed. 268; 18 Am. & Eng. R. Cas. 317, 320; S. C. 88 N. C. 526; 39 N. W. 189; 3 So. 633. In this case appellee was acting as a private carrier for hire, and was not held to all of a common carrier's liabilities. 4 Ell. Railroads, § 1573; 17 Wall. 357; 13 Ore. 352; 76 Ala. 357; 26 Vt. 247; 45 Ark. 263; 47 Ark. 79.

WOOD, J., (after stating the facts.)     Section 12, article 17, of the constitution provides: "All railroads which are now or may hereafter be built and operated, either in whole or in part, in this state shall be responsible for all damages to persons and property, under such regulations as may be prescribed by the general assembly." Section 6206 of Sand. & H. Digest provides: "All persons who own or operate railroads in this state are authorized and empowered to do and perform all acts and things which may be necessary to protect passengers on their cars from all acts of fraud, imposition or annoyance, which are attempted or perpetrated while said passengers are on said cars." Our laws therefore afford ample redress to passengers against railway companies for injuries such as are alleged in the complaint, whether done directly by the agents of the company, as therein alleged, or negligently suffered by them to be done by others. The complaint therefore states a cause of action. None of its allegations, setting up the specific acts constituting the tort, are denied. Appellee does not seek to jutsify them, but defends solely upon the ground that it hired the cars from which appellant was expelled to the Union Picnic Association of Little Rock, as a special private excursion train, and that all the acts of which appellant complains were the acts of the agents of such association, of which it knew nothing and for which it is not responsible. Such, in short, is the defense in this case, and it is not sufficient. Unless we indulge in some metaphysical refinements not justified by the difference in the facts of the two cases, the present case must be ruled by the principle

recently announced by this court in *Texarkana & Ft. Smith Ry. Co.* v. *Anderson, ante,* p. 123, where Chief Justice Bunn, speaking for the court, said: "The issue of law was thus made by the instructions given and refused as aforesaid, whether or not a railroad company can, by leasing its cars temporarily, as in this case, relieve itself from liability for carrying persons thereon beyond stations where they desire to get off, and from the duty of protecting passengers from the misconduct of one another, as in ordinary cases. A majority of the court are of the opinion that the company was liable for such injuries as might be shown to have been done, under these heads, in this case, growing out of its negligent running and control of the train." Citing *Harmon* v. *Railroad Co.,* 28 S. C. 401. The basic principle of all cases of this character, which is said by Mr. Justice Davis to be "the accepted doctrine of this country," is that "a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter, or the general laws of the state, by a voluntary surrender of its road into the hands of lessees." *Railroad Co.* v. *Brown,* 17 Wall. 450; *Chesapeake & Ohio Ry. Co.* v. *Osborne,* 30 S. W. 21; *Collins* v. *Texas & P. Ry. Co.,* 39 S. W. 643. See also *White* v. *Norfolk & S. R. Co.,* 20 S. E. Rep. 191; *Skinner* v. *Railway Co.,* 5 Exch. 787, and the many authorities cited in appellant's brief.

The learned counsel for appellee say in their excellent brief: "We grant that if plaintiff had become a passenger upon this train, by the consent of the hirers, and the railway company, by its agents, servants, or employees, had assaulted her, or had ejected her from the train, or done anything else that was improper, after the train had begun its journey, there might be some grounds for saying that the answer was insufficient." That the train had not begun its journey could make no possible difference, if the relation of passenger and carrier had been established. When the railroad hired to the Picnic Association a train of cars for excursion purposes, and allowed the association the privilege of selecting its own crowd of excursionists, it (the railway) must be held to have consented to carry as passengers, and to protect as such, all to whom the association sold tickets and accepted to go on the excursion

train. "As a general rule, every one on the passenger trains of a railroad company for the purpose of carriage, with the consent, express or implied, of the company, is presumptively a passenger." 4 Elliott, Railroads, § 1578, and authorities cited; Hutch. Carriers, § 554.

The railroad had the right to hire its train for excursion purposes, and to authorize the association to say who should be passengers on the train set apart for the excursion. The association designated Cora Moore as a passenger by selling her a ticket, and permitting her to enter the excursion train, and to take her seat as a passenger. Her ticket was the evidence of a contract for carriage from Little Rock to "Benton and return" on the train hired to the Picnic Association. The relation of passenger and carrier was established as soon as the appellant entered the train, and put herself under the control of the carrier for the purpose of carriage, unless, notwithstanding this, the carrier was justified in refusing to accept her as a passenger because of the reservation in the contract: "This ticket will be refused if presented by an objectionable person." We need not pass on this phase of the case, because it is not raised by the answer. In the absence of an affirmative allegation that appellant was an objectionable person, it must be presumed that she was unobjectionable. Therefore, according to the showing made by the complaint and answer, we are of the opinion that appellant was a passenger on the occasion named, and hence entitled to all the immunities, rights and privileges of any other excursionist passenger on that train. Among these were the right to be carried "to Benton and return," according to the contract evidenced by the ticket, and, while being so carried, to be protected from fraud, imposition or annoyance, while on the cars.

The railway company, through its own agents and employees, could not arbitrarily eject any excursion passenger, after he or she had purchased a ticket from the Picnic Association, and had entered the cars for carriage. Nor could it negligently permit the committee of the Picnic Association, or any one else, to do so under such circumstances, without being liable in damages for the resultant injuries. The authorities making railroad

liable for the acts here complained of are numerous.  *Railway Co.* v. *Davis*, 56 Ark: 51; Hutch. on Car. § 591, and authorities cited; 3 Wood, Railroads, p. 1675, 1863, § 363, authorities cited; 2 Fetter's Car. Pass. § 538, and authorities cited.

Reverse the judgment, with directions to sustain the demurrer to the appellee's answer.

BUNN, C. J., (dissenting.)  I think the court fails to properly discriminate between things a railroad company can do and those things it cannot do, when granting special privileges to excursionists.  A railroad company, in consideration of enjoying the special benefits of the state's right of eminent domain, and also under the rules governing public carriers, owes certain duties to the public, of which it cannot relieve itself by leasing its road or trains to another.  Among these is the duty of affording facilities at all times, under reasonable circumstances, for carrying freight and passengers, as the demand may be made upon it.  Its duty is to carry freight and passengers with all proper dispatch and safety.  When these duties have been performed, the public demand has been met, and, as the road and its trains and appliances belong to the company, it may use it as it sees fit; for in such case the public has no further claims upon it.

It is not denied that a railroad company can hire its trains—the seats and passenger accommodation therein—to excursionists.  Indeed, this is expressly sanctioned by statute, which allows reduction of fare in cases of excursions not allowed otherwise.  This being true, it remains to ascertain what are those things pertaining to an excursion train which it can do and cannot do.  It certainly can permit excursionists to fill up the cars with just such persons as they think proper to admit therein, for the principal objects of an excursion is to gather together congenial spirits for an outing. I refer now to an excursion like that under consideration, for there is another kind of excursion.  Now, any rules the excursionists may choose to make by which they may select their company is within their right to make, and they alone are responsible for their effects upon others, and the railway company is not.  Otherwise, special excursions are not to be

thought of; for the people will not seek recreation and the joys of social intercourse, except with those who are congenial, and the railroad companies cannot afford to contract with excursionists without being relieved of the work and responsibility of selecting the persons to be included in the company.

It is to be conceded, also, that the company cannot relieve itself of the duty of operating its trains—even excursion trains— by and through its own skilled and duly-authorized servants— persons who understand the business in their several spheres. Public policy demands that these skilled and competent persons shall operate the trains, even when loaded with excursionists traveling under special contracts, for the duty of life and property demands that this should be so.   These skilled and trained employees are under the restraints incident to their employment, and are then the better suited to this class of work.   Hence the rule laid down in *Texarkana & Ft. Smith Railroad Co.* v. *Anderson, ante*, p. 123, is the correct rule, as was the rule in *Harmon* v. *Railway Company*, 28 S. C. 401, and *Collins* v. *J. & P. Ry. Co.*, 39 S. W. 643; for in each of those cases the negligence alleged was in the operating and running the train, so as to produce the injury complained of; and in the case of *Collins* v. *Railway Company* the negligence complained of was the neglect of the conductor to protect the plaintiff from insult at the hands of her fellow passengers, a duty the conductor and his company clearly owed to the public, one which the company could not delegate to the managers of the excursionists, so as to relieve itself of the necessity of its performance.   That duty is one of the police duties imposed by law upon the conductor and other trainmen, a failure to perform which renders the company liable.

Finally, the railroad company, having provided for meeting the reasonable demands of the public for the carriage of passengers, is at liberty to employ its trains in its own way, with the proviso that these trains must, as a matter of public policy, be operated and run by its own qualified servants for the protection and safety of life and property, and any negligence in this respect (that is, in running and operating the train) will render the company liable.

The appellant never became the passenger of the railroad company, because she was excluded from the coach by the lessees of the train before the company or its servants had entered upon the performance of their duties—the running and operation of the train. Until the company, through its servants, took charge of the train for the purpose of running it, the lessees had the right, under their lease, to exercise their right of selecting passengers, being also responsible to persons injured by the unlawful manner of exercising that right of selection. The railroad company undertook, and was required, only to carry such persons as the lessees might select for the excursion, and owed no duty to such as the lessees excluded before the train started.

I think the judgment of the circuit court was correct, and should be affirmed.

BATTLE, J., concurs in this dissenting opinion.